## STATE v. WYSE.

1. On appeal from a conviction for murder, the judgment of this court was, "that the judgment of the Circuit Court be reversed," without any further directions ; and afterwards the remittitur of this court was transmitted to the Circuit Court. *Held*, that the defendant was properly put upon his second trial upon the same indictment.

2. *It seems* that after a reversal of a judgment of conviction for murder, the defendant may again be put in jeopardy of his life for the same offence, as the terms of the constitution of this State grant this exemption only after an acquittal.

3. A witness for the prosecution having stated on his cross-examination that he had made substantially the same statement on the former trial as now, and denying that he had admitted that he had told lies at the former trial, was asked if C had not then said to him that he ought to be in the penitentiary. *Held*, that the question was properly excluded as hearsay and irrelevant.

4. The refusal by the Circuit Judge to order a continuance is not appealable.

5. Testimony offered in behalf of the defendant to show that the deceased "had a prejudice" against defendant on account of some woman, but stating no threats, was properly excluded.

6. While the prisoner was on the stand as a witness in his own behalf he was asked whether he had not been once convicted of petit larceny, and he answered that he had not. In reply the State offered in evidence the record of his conviction, and defendant objected. *Held*, that while evidence of his having stolen would have been incompetent in reply to establish this collateral fact, the record of his conviction was properly admitted against him to affect his credibility and competency as a witness.

7. Where the record of a trial justice's court in a case of petit larceny is not incorporated in the "Case," and the testimony of the trial justice states that the defendant was arrested by his constable, and that the constable endorsed his return of arrest on the warrant and signed it, it must be assumed that such constable was duly appointed to execute the warrant.

8. In order to sustain the plea of self-defence, the jury must find : 1. That the accused believed at the time that he was in such immediate danger of losing his life or sustaining serious bodily harm, that it was necessary for his own protection to take the life of his assailant ; and, 2, that those circumstances were such as would justify such a belief in the mind of a person of ordinary firmness and reason. It would be error to instruct the jury to base their verdict upon what they believe

they would have done if they had been "in the shoes of the defendant at the time."

9. It is not error to refuse to charge a request which states a principle already charged, especially where the request fails to state the principle completely.

Before WITHERSPOON, J., Lexington, June, 1890.

This was an indictment against Julius Wyse for a murder committed on February 23d, 1889. The charge of the judge, so far as it has any bearing upon the exceptions, was as follows:

You have heard something with reference to the exercise of self-defence. There is no doubt that in proper cases a man is entitled to the protection of the law in the exercise of the right of self-defence. He can only claim that protection under certain circumstances; there are circumstances under which he cannot claim it. If a man brings about the difficulty himself, if he is the aggressor—if I were to assault you. Mr. Foreman, or provoke you to have a difficulty with me, and it should become necessary for me to wound or kill you, and I was indicted for it, and I interposed the plea of self-defence, it would not avail me at all; and why? Because it was my fault—I brought about the difficulty—I assaulted you, I provoked you to get in a difficulty with me; therefore the law says if a man come in here and claim the plea of self-defence, he must satisfy the jury: first, that he was without fault in bringing about the difficulty, in other words, that he was not the aggressor, that he was not the assailant, but the other party had assailed him; not only show, but he must satisfy, you in the light of the testimony, going back in the light of the testimony as best you can to the scene as it then transpired—he must satisfy you that he was not only without fault in bringing about the difficulty, but that the other man was the assailant, the deceased in this case; for instance, that the assault made upon him was of such a character as to put a man of ordinary reason and firmness under the conviction that his life was in imminent peril, was put in imminent peril of life, or imminent peril of great bodily harm. The right of self-defence is based upon the law of necessity— self-preservation; it proceeds upon the principle that a man who

is without fault, and is assaulted by another man, he has the right to strike in defence of his person, to use so much force—why? Because he is without fault in bringing about the difficulty—to use so much force, no more, as may be necessary—taking into consideration the character of the assault—to repel the assault and to protect himself from personal injury, from imminent danger of his life, or imminent peril of great bodily harm.

It has been stated to you in argument, what would you have done under similar circumstances? That is not the test. You might, or might not, have acted prudently or within the pale of the law. That is not the test. It is, what would a man of ordinary reason and firmness; what would have been his action under similar circumstances? In other words, was an assault made upon him, and was there a necessity for the man to strike in preservation and protection of his own person, to protect himself from imminent peril of his life, or from great bodily harm; and did he do no more under the circumstances than necessary to repel and resist the assault made upon him? If he interposes that defence, and satisfies you from the testimony that he acted in the exercise of the right of self defence, then, gentlemen, it is a good plea, and he should be protected; but when he sets it up, he must made it appear that he comes within the pale and protection of the law before he is entitled to it. * * * As 1 have already indicated to you, the party himself is not to be the sole judge of the circumstances under which he can exercise the high right of self-defence and take human life. The law says he must act under an honest conviction; must act in the absence of fault on his part, and when he comes and sets up this plea, he must satisfy the jury that he not only acted honestly, under conviction that the other party who assaults him—that the character of the assault was such as to put him in imminent peril of his life, or great bodily harm; but you are the final triers of the facts, and must go back in the light of the testimony, as best you can, to the scene, and it is for you to say whether the circumstances were such as to impress a man of ordinary firmness and reason with such conviction; that is, if he was assaulted, and the assault was of such a character as to put him in imminent peril of his life, or of great bodily harm.

Testimony of John Moore ruled out by the court and referred to in the eighth exception, was as follows:

Q. (By the Court:) Before the cutting took place, did you hear him say anything? A. He said, before the cutting took place, there was a certain woman; he had been in the penitentiary long enough to find out the ropes, and he would die and go to hell for that woman, or carry his point; that was before the cutting was done; he didn't call any name who—

Q. Didn't he mention some names when he said that? A. Dave Wiley, Jim Wiley, and Julius Wyse, three men that he had a prejudice against, about the woman he told me.

Q. What else did he say about that? A. He said he intended to carry his point with him, or die and go to hell for her.

### *Cross-examination.*

Q. Julius and Willie were great chums? A. Friendly, as far as I know. * * *

Q. You work at Red Bank? A. Yes, sir.

Q. Julius worked there? A. Mr. Rawls' mill is close to the Bank.

Q. Willie had been working there too? A. Yes, sir.

Q. Julius and Willie run together all the time? A. Yes, sir; seemed to be friendly as everybody else.

Q. This thing you have been telling about a woman, you never knew them to have a fuss about a woman? Tell the jury the truth. Do you know, or did you have reason to think, that they had trouble about a woman? A. Only something spoke at my house about a woman.

Q. This man never interfered with a woman that you ever heard of? A. No, sir.

The exceptions were as follows:

1st. Because his honor erred in holding that he had a right to try said case, when the same had never been remanded by the Supreme Court, where it had been upon appeal, upon all the facts in the case, and the Supreme Court having *reversed* the judgment of the Circuit Court, and making no order *remanding* said case for a new trial.

2d. Because his honor erred in holding that the prisoner could be tried at all when the judgment of the Supreme Court, with all the facts before it of a former trial, simply reversed the judgment of the Circuit Court.

3d. Because his honor erred in sustaining the objection of the solicitor to the defendant's counsel asking witness, Sol Meetze, "Didn't Tyler Caughman say to you that you ought to be put in the penitentiary, and made to break rock the balance of your life?" when defendant's counsel, on cross-examination, had a right to examine the witness as to any declaration made by him after the first trial in which he was sworn, in order to affect the credibility of his testimony.

4th. Because, by his honor's sustaining the solicitor's objection to the defendant's counsel asking witness, Sol Meetze, "Didn't Tyler Caughman say to you that you ought to be put in the penitentiary, and made to break rock the balance of your life?" he prevented and excluded defendant from the right to introduce testimony to prove what the witness said immediately after the first trial in contradiction of his testimony given at the trial.

5th. Because, by said ruling, his honor denied to the defendant the right to show that the witness, Sol Meetze, immediately after the first trial, had made statements in direct opposition to the testimony given by him at both trials.

7th. Because his honor erred in compelling defendant to go to trial in the absence of John Moore, a material witness for the defence, who was regularly bound over.

8th. Because his honor erred in refusing to allow the testimony of John Moore, taken at the former trial of this case, to be introduced when he had compelled the defendant to go to trial in the absence of said witness, except in so far as it went to prove the declaration of Willie Stark after he was cut.

9th. Because his honor erred in holding that any threat made by the deceased, and not communicated to the defendant, was incompetent, and could not be introduced.

10th. Because his honor erred in allowing a paper, purporting to be a record, in trial justice Dreher's court, entitled "The State *v.* Julius Wyse and Billy Wyse," indictment, petit larceny, to

be introduced by the State *in reply* to attack the credibility of the defendant.

11th. Because, even admitting that a proper record might be introduced for this purpose, the paper introduced was not a record, for it shows upon the face that it was served by a party who was not a regular constable, and who had no special appointment to make the arrest as required under the law ; and that said pretended judgment was a mere nullity.

12th. Because his honor erred when he charged the jury as follows : "It has been stated to you in argument, what would you have done under similar circumstances—that is not the test." Whereas, it is respectfully submitted that his honor should have charged as follows, which he was requested to do : "That if the jury believed that Julius Wyse had reasonable grounds to believe, from the action of Willie Stark throughout the entire trouble, that Willie Stark intended to commit a felony upon his person, he had a right to strike as he did, and to strike to death in his own protection."

13th. Because his honor erred in refusing to charge, "That the jury, in coming to their conclusion as to the right Julius Wyse had to believe that Willie Stark intended to commit a felony upon him, should place themselves in the shoes of the defendant at the time."

14th. Because his honor erred in refusing to charge the jury, "That the law does not require the necessity for taking life to be one arising out of actual and imminent danger, in order to excuse the slayer; but he may act upon a belief arising from appearances which give him reasonable cause for it, that the danger is actual and imminent, although he may turn out to be mistaken."

15th. Because his honor erred in refusing to charge the jury, "That while the law presumes malice from the mere fact of intentional killing, yet, when all the facts are brought out, there is no room for presumption, and the State who affirms malice must prove it."

*Messrs. Meetze & Muller*, for appellant.

*Mr. Nelson*, solicitor, contra.

January 6, 1891. The opinion of the court was delivered by

MR. JUSTICE McIVER. This is the second appeal in this case, the first being reported in 10 S. E. Rep., 612, as well as in 32 S. C., 45. The former appeal resulted in a judgment of this court in the following language: "It is the judgment of this court that the judgment of the Circuit Court be reversed." The *remittitur* having been sent down to the Circuit Court, the appellant was again put upon his trial, and when the case was called for trial his counsel moved for a continuance on the ground of the absence of John Moore, one of his witnesses, who had testified at the former trial, when the solicitor agreed to admit that such witness would give the same testimony as that found in certain folios of the "Case," as prepared for the former hearing in this court, subject, however, to his objection to the competency of such testimony, which, when it was offered, was ruled incompetent. Counsel for the prisoner then made the point that the Supreme Court having simply reversed the judgment of the Circuit Court, rendered at the former trial, without remanding the case for a new trial, the prisoner could not again be put upon his trial. The point was overruled by the Circuit Judge and the prisoner was arraigned and pleaded not guilty, and the trial proceeded in the usual form, which again resulted in a conviction of murder, upon which judgment was duly rendered, and the prisoner again appealed upon the several grounds set out in the record.

The first and second grounds raise the question as to the correctness of the ruling of the Circuit Judge, as to the effect of the form of the judgment of this court upon the hearing of the former appeal. The contention on the part of the appellant is, that the judgment of the Circuit Court in the former trial having been simply reversed, without any order remanding the case for a new trial, the prisoner cannot again be put upon his trial, for the reason that the case having been carried to the Supreme Court, the Circuit Court thereby lost jurisdiction of it, and could not again acquire jurisdiction without an order of the Supreme Court remanding it to the Circuit Court. This position, however, wholly

ignores the effect of the *remittitur* by which, as has often been held, this court loses its jurisdiction, and the same is restored to the Circuit Court.    It is clear, therefore, that there is no foundation for the objection to the jurisdiction of the Circuit Court.

It might, however, be contended that the prisoner having once been tried and convicted, and judgment having been rendered upon such conviction, which judgment has been reversed, not upon the ground that the indictment under which he was tried was invalid or fatally defective, he cannot be tried again without violating the fundamental maxim of the common law, "that no man is to be brought into jeopardy of his life more than once for the same offence" (4 Black. Com., 335), which has been, in substance, incorporated into the constitution of the United States, as well as of the constitutions of many of the States.  Now, while the terms in which this maxim is expressed, as well by writers on the common law, as in some constitutions, have given rise to many decisions as to when a person can be said to have been once "brought into jeopardy of his life," no such question can arise under the terms of the constitution of this State (art. 1, sec. 18), which reads as follows : "No person, after having been once acquitted by a jury, shall again, for the same offence, be put in jeopardy of his life or liberty ;" for, as is said by Mr. Justice McGowan in *State* v. *Shirer* (20 S. C., at page 406), "we do not understand that this constitutional provision is to be considered as merely declaratory of the common law, but, on the contrary, as superseding and repealing it, whenever the two are inconsistent with each other." and after quoting from Bishop on Criminal Law to show that a constitutional provision is controlling, he proceeds to say : "We cannot doubt that this provision in the constitution, which deals with the subject and touches the very essence of the matter, was intended to be exclusive and exhaustive—indeed, our only law on the subject."

. From this it follows that one who claims the benefit of the principle upon which the common law maxim rests, must derive his claim solely from the principle as declared in our constitution, and bring himself within the terms as there stated.  Now, as there is no pretence that the appellant has once been acquitted by a jury of the offence with which he is now charged, it is quite

clear that he could not avail himself of the exemption secured by the constitution from a second trial for the same offence. Indeed, it seems to be well settled, even where the principle as stated in the terms of the common law maxim prevails, that where the defendant on his own motion secures a reversal of a judgment of conviction, he thereby waives any objection to being put a second time in jeopardy, and may be tried again for the same offence. See 1 Bish. Cr. Law, sec. 998, *et seq.* But under the express terms of our constitution, as we have seen, it is unnecessary to consider this view. It seems to us clear, therefore, that neither the first nor second grounds of appeal can, in any view, be sustained.

The third, fourth, and fifth grounds of appeal impute error to the Circuit Judge in sustaining an objection interposed by the solicitor to a certain question proposed to a witness for the prosecution, one Sol Meetze, by counsel for the prisoner on his cross-examination. This witness, after saying that he had been examined at the former trial, and then made about the same statement that he now makes, was asked why he had told Tyler Caughman and Calhoun Caughman that he had been made to swear lies in this case, to which he replied that he never said any such thing. Up to this point no objection seems to have been interposed, but when the witness was asked the following question : "Didn't Tyler Caughman say to you that you ought to be put in the penitentiary and made to break rock the balance of your life ?" an objection was interposed and sustained, though the witness answered in these words : "If he did so, I didn't hear him say it." We think the objection was properly sustained ; for, in the first place, it was hearsay, and in the second place it was collateral to the issue on trial, and would not, therefore, afford any basis for a contradiction.

The sixth and sixteenth grounds of appeal, it is conceded, were taken under a misapprehension of the facts, and were, therefore, very properly abandoned.

The seventh ground, imputing error in refusing to continue the case in the absence of a material witness for the defence, cannot, as has often been held, be sustained.

The eighth ground complains of error in refusing to allow the

testimony of John Moore, taken at the former trial, to be intro-
duced. As has already been stated, when the counsel for pris-
oner stated that he was not ready to go to trial on account of the
absence of this witness, the solicitor agreed to admit that such
witness, if present, would testify as he had done at the former
trial, subject, however, to his objection to the competency of such
testimony. This testimony, when offered, was ruled incompetent,
on the ground that while threats made by the deceased against
the prisoner would be competent, yet the testimony offered was
too indefinite, and did not seem to point to the prisoner. The
testimony thus ruled out is incorporated in the ·"Case," and from
a careful examination of it we do not think there was any error
in the ruling complained of. The utmost that can be said of it
is that it tends to show that the deceased, at some time (when is
not stated, except that it was before the fray, in which the fatal
wound was given), "had a prejudice" against three persons, one of
whom was the prisoner, about a woman ; and while it does show
that the deceased expressed himself in very strong terms as to.
what he would do and suffer for the woman, it does not show any
threat against the prisoner or any one else.

The ninth ground is based upon a misconception of the ruling
of the Circuit Judge. As we understand it, his honor did not
hold that a threat made by the deceased against the prisoner
would not be competent, unless it was communicated to him.

The tenth and eleventh grounds are based upon alleged errors
in allowing a paper purporting to be a record of a trial justice
court to be introduced by the State in reply to attack the credi-
bility of the defendant. It seems that while the prisoner was on
the stand testifying in his own behalf he was asked whether he
had ever been tried and convicted before Mr. Dreher, a trial
justice, for petit larceny, in stealing a chicken, which he denied,
and also denied that he had ever been arrested by one P. H.
Corley as a constable under a warrant charging him with that
offence. In reply, the State offered the trial justice, with the
warrant in his hand, for the purpose, as was claimed, of attack-
ing the credibility of the defendant, when the counsel for the
prisoner objected to the introduction of the record. So far as
the record before us shows, the court made no ruling upon this

objection; but as the witness proceeded to state from the paper that it was a warrant for the arrest of the prisoner and his brother, under a charge of petit larceny, we suppose we are bound to assume that the objection was overruled. The question, therefore, is whether there was any error in this ruling.

In the case of the *State* v. *Robertson* (26 S. C., 117), it was held that when the accused avails himself of the privilege allowed him by statute of testifying in his own behalf, he assumes the position of any other witness, and hence his character for veracity may be attacked in either of the recognized modes of doing so—that is, by offering witnesses to impeach his general reputation for veracity or by offering evidence, after laying the proper foundation for that purpose, tending to show that he has made statements in reference to the issue on trial contrary to those testified to in court. Treating, then, the accused as an ordinary witness in this case, the precise question is whether it was competent for the State to offer any evidence for the purpose of attacking the credibility of the defendant, tending to contradict the defendant as to a collateral fact stated by him in the cross-examination. Whether the defendant had been indicted for and convicted of petit larceny in stealing a chicken, was a matter wholly irrelevant to the issue then on trial, and the rule is well settled that any statement which he may have made in regard to such collateral matter was not open to contradiction by other witnesses. In 1 Greenl. Evid., section 449, it is said to be "a well settled rule that a witness cannot be cross-examined as to any fact which is collateral to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony. And if a question is put to a witness which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who asked the question, but it is conclusive against him." To same effect see 1 Stark. Evid., 134, 145; *Phillips Evid.* (2d Am., from 3d London, edit.), 230–1; also *Smith* v. *Henry*, 2 Bail., 127; *Jones* v. *McNeil*, *Ibid.*, 473, where the rule, as above stated, is recognized.

This well settled rule is founded upon two reasons—first, that while a witness is supposed to be always ready to support his general character, he cannot be expected to be always ready to

defend or explain all of his past acts; and hence the rule that in impeaching the character of a witness, the testimony must be confined to evidence of his general character, and it is not competent to prove particular facts affecting his character. Second. Because the admission of such testimony would tend to multiply the issues and thus confuse the jury. But where these reasons are absent, there is an exception to the well settled rule above stated. Thus it is competent to impeach the credibility of a witness by producing the record of his conviction of an infamous offence, which necessarily affects his character; for in such a case the witness has already had an opportunity of meeting the specific charge on his trial therefor; and there is no danger of multiplying the issues, as the record is conclusive. This exception is plainly recognized by Judge O'Neall, in delivering the opinion of the Court of Appeals in *Anonymous* (1 Hill, at page 257), where he says: "The credit of a witness may be assailed by showing him to be unworthy of credit in a court of justice; this is generally done by proof of bad character. And in proof of this kind, the party assailing the witness cannot go into evidence of particular crimes committed by the witness (unless a conviction of a felony for the *crimen falsi* can be produced), and this is what is meant by not being allowed to go into particular facts to show a want of character." See also 7 Am. & Eng. Encycl. of Law, 109; *Com.* v. *Gorham*, 99 Mass., 420; *Jeffersonville &c. R. R. Co.* v. *Riley*, 39 Ind., 568.

While, therefore, under the general rule above stated, it would not have been competent for the State to examine witnesses in reply for the purpose of contradicting the statements made by the accused, while on the stand as a witness, in regard to any matter collateral to the issue then on trial, it was competent under the exception to that rule to offer in evidence the record of the conviction of the accused of an offence which necessarily affected not only his credibility, but his competency, as a witness (*State* v. *James*, 15 S. C., 233), for he had already been afforded an opportunity to defend himself against such charge, and it opened no new issue, as the record was conclusive.

The appellant, however, insists that the paper offered as a record of the conviction of petit larceny was a nullity, because, as.

he alleges, it shows upon its face that the warrant was executed by a person "who was not a regular constable, and who had no special appointment to make the arrest as required under the law." Inasmuch as a copy of the record is not incorporated in the "Case," we have no means of knowing what appeared or did not appear upon its face, except from what is stated in the testimony of the trial justice, which is embraced in the "Case." So far from it appearing from that testimony that the warrant was not executed by a lawful officer, the contrary there appears, for the trial justice testifies that P. H. Corley was his constable at the time; that his return, showing that defendant had been arrested, was endorsed upon the warrant and signed by him as constable; and as the trial justice unquestionably had authority to appoint him to act as a constable for him in that case, we are bound to assume, in the absence of any evidence to the contrary, and in view of the affirmative evidence that Corley was the constable of the trial justice at the time, and acted as such in that particular case, that he had been duly appointed as such. The present case differs materially from the case of the *State ex rel. McCall* v. *Cohen* (13 S. C., 198), cited and relied upon by counsel for appellant. There the proceedings before the trial justice were brought up by writ of *certiorari*, and upon inspection fatal jurisdictional defects were discovered; while here the record is not before us, and all that we know of it is what appears in the testimony of the trial justice set out in the "Case," and this does not show any jurisdictional defect. It is quite clear, therefore, that this purely technical point cannot be sustained.

The twelfth, thirteenth, and fourteenth grounds of appeal impute error to the Circuit Judge in instructing the jury as to the law of self-defence. The plea of self defence rests upon the idea of necessity—a legal necessity—that is, such a necessity as in the eye of the law will excuse one for so grave an act as the taking of human life. Hence it must be a necessity which is not brought about by the fault of the accused; for the law will not allow one to avail himself of such a defence when, by his own unlawful act he has placed himself under circumstances which render it necessary to take life in order to preserve his own life, or to protect himself from serious bodily harm. Whether such necessity ex-

isted in a given case, must be judged of by the jury, and not by the person accused. The jury should not ask themselves the question what they would have done under the circumstances surrounding the accused at the time, as is contended for in the twelfth ground of appeal; nor should they "place themselves in the shoes of the defendant at tne time," as is insisted on by the thirteenth ground of appeal, for jurors are but men, subject to all the passions and frailties incident to human nature, which it is one of the functions of law to restrain and correct; but they should, as sworn officers of the law, look carefully at all the circumstances surrounding the accused, as they appeared at the time the fatal wound was inflicted, and ask themselves two questions: *first*, did the accused at the time believe that he was in such immediate danger of losing his life, or sustaining serious bodily harm, that it was necessary for his own protection to take the life of his assailant? *Second.* Were those circumstances such as would justify such a belief in the mind of a person of ordinary firmness and reason? *State* v. *McGreer*. 13 S. C., 464; *State* v. *Beckham*, 24 *Id.*, 283; *State* v. *Turner*, 29 *Id.*, 34.

It seems to us that the charge of the Circuit Judge, as set out in the "Case," substantially conformed to these principles, and is therefore free from objection. The proposition stated in the request to charge, the alleged refusal of which constitutes the basis of the fourteenth ground of appeal, was embraced in the general charge, with its proper qualification and in its proper connection, and there was therefore no error in refusing to charge separately the proposition there stated. The point of that exception seems to be that the jury should have been made to understand that it was not essential to make out the plea of self-defence that the accused should have *actually* been in danger of losing his own life or sustaining serious bodily harm, but it would be sufficient if the appearances were such as to justify a belief that the danger was *actual*, even though that should prove to be a mistake. This point was, as it seems to us, sufficiently brought to the attention of the jury in the general charge, and it was therefore unnecessary to repeat it in the form presented by the request, especially when it would have been erroneous to so repeat it without adding the proper qualification.

The fifteenth ground of appeal seems to have been taken under a misconception of the charge, for the jury were explicitly instructed in terms even stronger than those used in the request upon which this ground is based.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and the case be remanded to the Circuit Court in order that a new day may be assigned for the execution of the sentence heretofore imposed.