## VIRGINIA-CAROLINA CHEMICAL CO. v. KIRVEN.

1. REPLY—AGRICULTURAL LIEN.—On trial of issue of amount due under agricultural lien made up at instance of defendent, he is not entitled to reply in evidence.

2. EVIDENCE.—A PHOTOGRAPH of an insect is competent evidence to represent it, when the picture is shown to represent the original.

3. IBID.—OPINION.—A witness may give his opinion, based on facts capable of reproduction in language after first stating such facts.

4. IBID.—FERTILIZERS.—In absence of evidence that a particular fertilizer contained iron pyrites, experiments as to their effect on crops are irrelevant in defense of failure of consideration to action for purchase price.

5. AGRICULTURAL LIEN.—It is not essential to the validity and lien of an agricultural lien that the advances secured thereby be actually used in the cultivation of crops on the lands mentioned therein.

6. Evidence.—It is competent to show the effect of a particular fertilizer on crops other than those of lienor, in defense of failure of consideration to action for purchase price.

7. Agricultural Lien.—Advances made for cultivation of a crop before execution of lien to secure payment, are not covered thereby.

8. Ibid.—Res Judicata.—How much was due on an agricultural lien, was not adjudged in refusal of motion to vacate lien attachment for improvident issuance, for if *any* amount was due, the attachment was not improvidently issued.

Before Buchanan, J., Darlington, March term, 1899. Reversed.

Action by Virginia-Carolina Chemical Co. against J. P. Kirven under statute for amount due under agricultural lien. Defendant appeals.

*Messrs. Boyd & Brown,* for appellant, cite: *As to amount due having been adjudged by Judge Watts:* 34 S. C., 354; 24 S. C., 481; 49 S. C., 512; 17 S. C., 35; 27 S. C., 364; 29 S. C., 450. *As to opinion evidence:* 34 S. C., 140; 20 S. C., 452; 32 S. C., 400; 40 S. C., 330. *As to the admission of the photograph of the weavil:* 42 Am. R., 478; 20 S. C., 451. *As to refusal to permit defendant to reply in evidence:* 35 S. C., 171; 1 N. & McC., 355; 1 Bay, 248.

*Messrs. Wilcox & Wilcox* and *R. L. Dargan,* contra, cite: *As to amount due having been adjudicated by Judge Watts:* 52 S. C., 56. *As to right claimed by defendant to reply:* Rev. Stat., 2517; C. C. Rule 59; 35 S. C., 167. *As to opinion evidence:* 19 S. C., 70; 117 Mass., 122.

April 17, 1900. The opinion of the Court was delivered by

Mr. Justice Jones. This is an appeal in a special proceeding under section 2517 of the Revised Statutes. Under a warrant issued at the instance of the plaintiff to enforce an agricultural lien for fertilizers, the crops of the defendant were seized and sold. Pursuant to said statute the defend-

ants giving the requisite notice with affidavit, contended that the amount claimed by plaintiff was not justly due. Upon this issue a trial was had in the Circuit Court before a jury, and the jury found a verdict for the plaintiff for $2,298.

1. Appellant's second exception raises the question whether he was entitled to reply in the testimony on the issue presented. We think the Circuit Court was correct in denying him this claim. His pleading was a denial of the plaintiff's claim, which placed the burden of proof on plaintiff. Moreover, the statute expressly provides that the person who makes the advances shall be the actor.

The remaining exceptions relate to rulings as to the admissibility of evidence, and we will consider them in their inverse order. The seventh exception was abandoned.

2. The sixth exception is as follows: "VI. The presiding Judge erred in permitting the witness, J. B. Crouch, to exhibit to the jury a picture of the Mexican weavil, and a book containing it, which book was stated to be a bulletin from the department of entomology; it being submitted that the same was inadmissible, the book not having been authenticated, the testimony being hearsay, and without the sanction of an oath, and the picture as an illustration being calculated to have undue weight with the jury." One of the grounds upon which defendant was contesting plaintiff's claim was failure of consideration, and to this end he had offered evidence for the purpose of showing that the fertilizers furnished by the plaintiff were not skillfully prepared as represented, and that they, instead of benefiting the crop, in large measure destroyed it. It appears that while defendant's cotton, upon which the fertilizers had been used, had good stalk and was well bolled, the bolls took rot inside and failed to open. Defendant sought to show that the fertilizers caused this. Plaintiff sought to show that this result was due to the operation of the Mexican weavil, which punctured the boll and deposited its eggs therein. The record upon which the exception is based is

as follows: Q. Have you ever seen the weavil himself? A. Yes, sir. Q. Describe it? A. It is a little brown bug, about twice the size of a grain weavil. Q. Have you a picture of the bug? A. Yes, sir. Q. Can you show him by photograph? A. Yes, sir. Plaintiff offers to exhibit picture of Mexican cotton boll weavil to the jury. Defendant objects. The objection was overruled. Defendant excepts. Q. Is this a picture of the weavil? A. Yes, sir. Q. The bug you have seen, does it correspond with that? A. Yes, sir. Q. Show that to the jury? (Witness exhibits cut of Mexican cotton boll weavil, as represented in bulletin of the department of entomology.) A. That is a weavil enlarged—he is not that large. We think the evidence was competent. Whenever it is relevant to give a description of any person, place or thing, an exact representation thereof by picture or photograph is as competent as, and far more reliable than, a mere verbal description. It is a matter of common occurrence to put the diagrams of localities in evidence, and in the case of *The State* v. *Kelley,* 46 S. C., 59, a photograph of the place of the crime was held competent. Of course, there must be evidence, as in this case, showing that the picture is a correct representation of the thing sought to be described. The matter introduced being a mere picture in aid of verbal description, does not come under a class of books containing a specific treatise on the subject involved, and no such book or treatise was introduced.

3. The fifth exception alleges error "in permitting the witness, J. B. Crouch, to give his opinion as to the cause of the injury done appellant's cotton" and to answer the question, "From your experience and from your investigation of your own crop, what was the cause of the rotting of these bolls and the damage to them (referring to the cotton in evidence); it being submitted that the witness has not been shown to be an expert, entitled to give his opinion in evidence, and the question was so framed as to substitute the opinion of the witness for the verdict, and usurp the

province of the jury." Previous to the question objected to, it had been shown that the witness was an experienced farmer in cotton culture; that his own cotton had been damaged in the same manner as the specimens of cotton from defendant's field, exhibited in evidence; that he had made special investigation to ascertain the cause of injury in his own crop, and took steps to inform himself. If this satisfied the trial Judge that the witness was competent to give an opinion as an expert on the subject, he committed no error in permitting him to testify as such. But was this strictly expert testimony? We think the evidence more properly falls within the principle announced in *Jones* v. *Fuller,* 19 S. C., 70, wherein the Court, after citing authorities, said: "From these authorities we deduce the following conclusions: First. That the exception to the general rule that the opinions of witnesses are not competent evidence, is not confined to the case of expert testimony. Second. That while it is necessary that the witness should first state the facts upon which he bases his opinion, where the facts are such as are capable of being reproduced in language, it is not necessary to do so where the facts are not capable of production in such a way as to bring before the minds of the jury the condition of things upon which the witness bases his opinion. Third. That such evidence is competent from the necessity of the case." The witness had exhibited to him specimens of the cotton of defendant, and the effect of his testimony was that in his own experience his cotton had sustained similar injury, which on investigation he traced to the insect known as the Mexican weavil.

4. The fourth exception imputes error "in refusing to allow the witness, J. J. Ward, to testify as to an experiment made by him with the refuse matter, or residuum, compound of iron pyrites from about a phosphate mill, inasmuch as the testimony so excluded was admissible; it being incumbent on, or at least important and allowable to, appellant to show that the fertilizer could have been manufactured in such a way, and with such materials as to be de-

structive to crops." On reference to the "Case," we find that the witness was asked: "Have you ever had any practical experience with iron pyrites? If you have, tell the jury about it?" This was objected to as irrelevant, and the Court said to defendant's counsel: "I will allow that testimony to be introduced, if counsel will assure me that he will connect it with the 'Case;' but this matter now is not connected in any way with any substantive fact in the case." Counsel gave no such assurance, and put the question for the benefit of an exception. The ruling was correct. There had been no evidence whatever that the fertilizers in question contained iron pyrites, hence the matter was wholly irrelevant.

5. The third exception assigns error "in not permitting the witness, J. P. Kirven, to testify as to crops not grown by himself, or not grown on his home place, to which had been applied the fertilizers sold to him by respondent, and of which he complained, inasmuch as such testimony was manifestly competent and relevant to the main question in the cause, which was whether the injury suffered by appellant's crops was the work of the fertilizer or of some other agency, and was strongly probative of the theory and conclusion of appellant." When the defendant, Kirven, was examined as a witness, his counsel endeavored to show by him that he had sold to others some of the fertilizers furnished by plaintiff, and desired to have him state how the cotton of those others who had used some of the fertilizer was affected. Plaintiff's counsel objected to any testimony going to show any disposition by the defendant of this fertilizer, other than using it on his own crop, on the ground that such testimony controverts the terms of the lien and also controverts the adjudication of this question by Judge Watts' order. This objection was sustained, and later when defendant's counsel inquired of the Court whether he was restricted to what this witness used on his own plantation, the Court said, "That is the ruling." A brief statement of the facts is necessary to make clear the point involved. Previous to the trial of this issue in this proceeding, defendant

moved before Judge Watts at chambers to vacate the warrant of attachment issued in these proceedings on the ground "that the same was improvidently issued, in that the advances made were purchased, made and delivered before the execution of the said agreement of lien, and a part, at least, of the said advances were not intended or purchased for use in the cultivation of the crops of the said J. P. Kirven, but for sale by him as a dealer in agricultural supplies." Affidavits pro and con were submitted on this motion, and Judge Watts in a brief order refused the motion to vacate for improvidençe. We do not think that Judge Watts' order adjudicated whether all the fertilizers furnished by plaintiff were used by the defendant on his "home place," as' that issue was not involved in the determination of the question whether the warrant was improvidently issued. On this point we will speak further in considering the next exception. Nor does the testimony proposed in any way controvert the lien for advances, wherein it was stipulated that the lienee agrees to advance to the lienor fertilizers to the amount of $2,298 for agricultural purposes to be employed in the cultivation of the plantation in Darlington County, owned by the said J. P. Kirven, and known as the "Home place," and wherein the said Kirven agrees that "S. M. McCall (the assignor or agent of plaintiff) shall have a lien for said advances, &c., on all the crops made on said plantation during the year 1898, &c." It is not essential to a lien for agricultural advances, that the advances be actually used in the cultivation of the crop on the land described therein. It is sufficient if the advances are such as the law allows and the advances are made for that purpose. The testimony was, therefore, not objectionable on the ground alleged. We think the testimony was competent, for whatever it was worth, as tending to show the effect of the fertilizer furnished on the crops whereon it was used, whether on the home place or elsewhere. But inasmuch as the defendant was afterwards given unlimited opportunity to show the effect of the fertilizer on the other crops upon

which it was used, of which opportunity he fully availed himself, we are not disposed to reverse the judgment on this ground.

6. The first exception complains of error "in excluding the testimony offered by appellant tending to prove that a portion of the supplies furnished by respondents to appellant had been delivered before the execution of the agricultural lien, and that portions had been advanced with the knowledge of respondent, not to aid in the making of appellant's crops, but for sale by him as a dealer in agricultural supplies, on the ground that the defense so proposed to be made had been passed on and adjudicated by his Honor, Judge Watts, in a previous proceeding; it being respectfully submitted that the former proceeding was a motion to set aside a warrant to seize crop, and the question of the amount secured by the lien did not enter into that litigation, and that said defenses were not germane to any issue or issues before Judge Watts, and could not be and were not considered and passed on by him in reaching his determination." The exclusion of such testimony was reversible error. It was material for defendant to show that a portion of the fertilizers furnished was delivered previous to the execution of the agricultural lien therefor, since the statute expressly provides that "an agreement in writing shall be entered into before such advance is made, &c." This evidence was important in determining what amount was justly due under the lien. The order of Judge Watts, referred to already, did not adjudicate this question. The question before Judge Watts was whether the warrant of attachment was improvidently issued, the question here is what is the amount justly due under the lien. It will be readily seen that if *any portion* of the fertilizers was delivered after the execution of the lien, that would justify Judge Watts in refusing to vacate the warrant for improvidence, and that such was the fact, appeared in the affidavits submitted by the defendant. . The decision of that matter was all that was necessarily involved in determining the question of

improvident issuance in the record under consideration; whereas, in the issue now presented, it is sought, not to show that no fertilizers were furnished *after* the execution of the lien, but to show that a portion, and what portion, was furnished *before* the execution of the lien.   Thus the evidence proposed is perfectly consistent with the order refusing to vacate the warrant. . Upon this ground there must be a new trial.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.