### STATE v. WAY.

1. CONTINUANCES on the ground of the absence of witnesses are within the discretion of the trial judge; a refusal of the defendant's motion for continuance, in a murder case at the second term, where witnesses subpœnaed failed to appear, and the prosecuting attorney refused to admit that they would testify to what was expected of them, is not reviewable error.

2. HOMICIDE—WEAPON.—The trial judge correctly charged that no provocation will excuse one of the crime of murder where the weapon used indicates an intention to take life, unless such provocation is accompanied with unlawful violence or an apparent intention to do great bodily harm.

3. IBID.—SELF-DEFENCE—CHARGING JURIES.—In charging the request by the solicitor, that "when self-defence is pleaded, it must be proved by a preponderance of evidence," the judge did not err in failing to add that, upon the whole testimony, the defendant was entitled to every reasonable doubt, such instruction having been afterwards sufficiently charged.

4. IBID.—CHARGING JURIES.—Having passed upon the several requests to charge, the judge said: "I will endeavor to present to you as succinctly as I can the law applicable to the present case." *Held*, no error.

5. IBID.—IBID.—CORRECTING CHARGE.—In the charge, "If two persons meet and hot words follow, and that is followed by a combat which is calculated to stir the blood and arouse the passions, and in the midst of that struggle one takes the life of the other, the law would say that such killing was manslaughter," the use of the words, "combat" and "struggle," was not calculated to mislead the jury; and if so, the judge should have been requested at the time to remove the ambiguity.

6. CHARGING JURIES—FACTS.—In saying to the jury, "I cannot do anything towards brushing away the sophistries of counsel," the judge referred to no particular counsel, and committed no error prejudicial to defendant.

7. IBID.—There was no error in charging the jury: "You are not responsible for the judgment. You are not responsible for the result."

8. IBID.—FACTS—APPEAL RECORD.—Error cannot be imputed to the trial judge in charging on the facts in certain particulars, by asking certain interrogatories, where the appeal record does not embrace the testimony, nor show what facts were disputed.

9. TAMPERING WITH JURY.—Where the jury are permitted to separate during the progress of a trial for murder, the mere fact of a conversation being had between one of the jurors and a witness for the prosecution, as they walked out of the court room, furnishes no ground for a new trial.

10. INADVERTENT OMISSION in judgment of this court corrected before *remittitur* sent down.

Before HUDSON, J., Orangeburg, May, 1892.

Indictment against Jefferson M. Way for the murder of one Whetstone, in December, 1891. At the trial the defendant announced that he was not ready to go to trial; that several of his material witnesses, who had been duly subpœnaed, were absent, and moved for a continuance on that ground; and submitted an affidavit putting himself within the rule of court as to due diligence, etc., and setting forth what he expected to prove by four witnesses who were absent. It appeared on inquiry that two of the absent witnesses had been bound over, and that subpœnas had been issued and sent out for the other two. The solicitor then refused to make any admission as to what the two witnesses not bound over would testify to if present. He was then asked to speak as to the two witnesses who were bound over. He agreed in writing, that, provided the affidavit was so amended as to apply only to the two witnesses who had been bound over, and the fact stated that they were negroes, he would then admit that these two witnesses would, if present, testify as set forth in the defendant's affidavit. Thereupon, against the protest of the defendant, his honor overruled the motion for a continuance, and ordered the case on to trial.

The charge to the jury was as follows:

It remains for me to give you instruction as to the law bearing upon the case, and you are to be controlled by my interpretation of the law, and you are to apply the facts as you find them to the law as I shall give it to you. The facts are for you. You are to draw your own conclusions from the evidence. That is your exclusive province. In the exercise of your judgment in analyzing the testimony, I can give you no aid—I am not allowed to do so. You are the exclusive judges of the facts of the case.

The charge in this case is, that on the 25th of last December, in a little town or village then called Prewitt's, on the South Bound Railroad, Elliott Whetstone came to his death, as it is alleged, by a pistol shot wound at the hands of the accused, Jefferson M. Way, and the charge against him is that in taking the life of Whetstone, he committed murder.

I am requested by the counsel for the State and for the defence to submit to you certain propositions of law, and before

I proceed further in the case, I will notice the propositions contained in these requests, and will give you my construction of them. On behalf of the State, the following requests are submitted:

1. "A small blow will not justify an enormous battery." That is correct.

2. "No provocation will excuse one of the crime of murder, when the weapon used indicates an intention to take life, unless such provocation is accompanied with unlawful violence, or an apparent intention to do great bodily harm." I charge you that that is correct.

3. "Drunkenness will not excuse nor mitigate the crime of murder." Such is the law with us.

4. "In order to make out a case of self-defence, there must be a necessity to take human life, or do great bodily harm, in order to save his own life or great bodily harm." That is a correct proposition of law, except that the word "necessity" should be qualified by the words "real or apparent."

5. "When the defence is self-defence, the jury, and not the prisoner, is to judge whether the necessity existed." The prisoner acts upon his own judgment, but you are to determine whether the necessity did exist, or really appeared to exist, and whether that judgment was a reasonable one.

6. "When self-defence is pleaded, it must be proved by a preponderance of evidence." That is a correct proposition. It must appear from the preponderance of the evidence that the accused acted in self-defence.

7. "A reasonable doubt is a serious, well-founded, and substantial doubt." I will add, that it is a doubt growing out of the testimony, and arising from an insufficiency of proof to convince the mind of a reasonable man in an honest search after truth.

The defendant's counsel submits the following requests:

1. That if the jury believe, from the evidence, that the pistol shot wound, which took the life of the deceased, was inflicted by the defendant, and that the defendant actually believed, at the time, that the deceased was attempting to take his life, or inflict upon him some serious bodily harm, and that it was

necessary for his protection to take the life of the defendant, they should render a verdict of "not guilty."

2. That if, from the nature of the attack, there is reasonable ground for a man to believe that there is a design to take his life, or to do him some great bodily harm, the killing of the assailants, or any of them, will be excusable homicide, although it should afterwards appear that no felony was intended.

3. That a man is not bound, if his life is in danger or peril, to wait until he receives a fatal wound, or has some great bodily injury inflicted upon him, before he can take the life of another.

4. That if the jury are satisfied, from the evidence, that the wound which caused the death of the deceased was inflicted by the defendant, and that the circumstances in which the defendant was placed, at the time of the shooting, were such as to induce a reasonable belief that there was a necessity to take the life of the deceased in order to save his own life, or protect himself from serious bodily harm, the killing was excusable homicide, and the jury should render a verdict of "not guilty."

5. That if the jury believe, from the evidence, that the defendant, from the nature of the attack made upon him, actually believed that he was in danger of losing his life, or of sustaining serious bodily harm, and that the defendant did fire the pistol shot that killed the deceased, the killing was excusable homicide, although it afterwards appeared that no felony was intended, and the jury should render a verdict of "not guilty."

6. That if, in the opinion of the jury, the defendant actually believed that he was in such immediate danger of losing his life, or of sustaining serious bodily harm, it was necessary, for his own protection, to take the life of the deceased, and if, further, in the opinion of the jury, the circumstances in which the accused was placed were such as would justify such a belief in the mind of a person possessed of ordinary firmness and reason, then a case of self-defence is fully made out.

7. That the true test as to whether it is a case of self-defence is the opinion of the jury, after hearing all the circumstances, whether the accused actually believed that the necessity ex-

isted, for his own protection, to take the life of his assailants, or either of them, and whether, under all the circumstances surrounding the parties at the time the violence was committed, the accused was warranted in forming such belief.

8. That if the jury believe, from the evidence, that the defendant did fire the pistol shot that took the life of the deceased, and that it was done in sudden transport of passion, or heat of blood upon reasonable provocation, and without malice, it is solely imputable to human infirmity, and the offence is manslaughter.

9. That if the jury believe, from the evidence, that, although the defendant had no reasonable ground to believe that he was in danger of death or great bodily harm, yet, if he was simply struck by the deceased, or had reasonable ground to believe that the deceased intended a simple or non-felonious assault, simply intending to chastise or whip him, while this would not justify the defendant in resorting to the extreme measure of taking the life of the deceased, and if, under such circumstances, the defendant killed the deceased, they could only convict of manslaughter.

10. That, while words are not legal provocation, yet when one strikes, or offers to strike, another, or in any way rudely offers or produces physical contact by which anger is aroused, and the shot is inflicted in sudden heat and passion, the law says that it is not murder, but manslaughter.

11. That if the jury believe, from the evidence, that the deceased struck the defendant with his hand simply, or attempted to strike him, and the defendant then fired and killed the deceased, that would be manslaughter.

12. That if, from the evidence, a reasonable doubt exists in the mind of the jury as to whether the defendant was actuated by malice, at the time the fatal shot was fired, they cannot convict him of murder.

13. That it is not only excusable, but the duty of every one who sees a felony attempted by violence, to prevent it if possible, and in the performance of this duty, which is an active one, there is a legal right to use all necessary means to make the resistance effectual.

22—38

14. That if, from all the evidence, the jury have a reasonable doubt as to whether or not the defendant fired the pistol shot which caused the death of the deceased, the defendant is entitled to the benefit of that doubt, and their verdict should be "not guilty."

I will simply say, gentlemen, that I charge you those propositions of law as correct.

Now, I will endeavor to present to you as succinctly as I can the law applicable to the present case. And, in the first place, I will define to you the different grades of homicide known to our law. Murder is the killing of a human being with malice aforethought, either express or implied. There must be malice. That malice must be aforethought. That is, it must be premeditated. It must take possession of the mind before the deed is done, and the deed must be done in pursuance of that evil intent. How long this malice aforethought should have possessed the mind, is not fixed by any rule. It varies according to each case. Sometimes it may be that the malicious intent possessed the mind of the party for a long time, the party waiting patiently for an opportunity to carry his purpose into effect, and at last the opportunity presents itself, and his fatal design is carried into effect.

It may be that the resolution to take life, the intent to kill, takes possession of the mind, and, in a very short time thereafter, a favorable opportunity presenting itself, the purpose is carried into effect. It may be a very brief time, but yet there must be the intent to kill formed in the mind, the malicious purpose, and the killing must proceed from that to constitute murder. Malice may be either express or implied. Malice is said to be express when the deed is done with sedate and deliberate mind and formed design, and that formed design is made manifest by external circumstances going to show the intent. For instance, there may be a previous declaration that the party is going to commit the deed; or it may be that careful preparation to do the deed is made, and the deed is done in pursuance of that preparation—such as lying in wait, or the preparation and administering of poison. Now, where you have testimony of witnesses to these external circumstances,

which go to show positively the formation of the intent, the malice there is said to be express.

But in many cases we are driven to circumstances to ascertain what a man's intent is. In a large number of cases we are without witnesses to prove these external circumstances. In a large number of cases a man does not proclaim his intent from the housetop; he keeps it wrapped up in his own bosom; so that we are driven to the facts and circumstances immediately attending the homicide to ascertain the intent of the party— to ascertain the existence or non-existence of malice. And if the homicide takes place under circumstances showing the absence of legal excuse or provocation, and showing the presence of a mind reckless and regardless of human life, and fatally bent on mischief, we say that the deed must have proceeded from this malicious intent. As for example, if a strong, sane man should take a tender infant and destroy its life. To what could we attribute such an act, except to the existence of that evil intent in the human mind which we term malice? There could be no plea of self-defence—no plea of sudden heat and passion upon sufficient legal provocation—and such an act would be murder. Suppose a sane man in this audience here should draw a pistol and fire it at random, and should kill probably his best friend—with no apparent provocation—no reason for it. There would be no self-defence there—no sudden heat and passion. Yet we have no evidence of a careful preparation, or declaration, to do the deed. We have no evidence of any of those external circumstances going to show the intent, except the act itself. And that act would show such a reckless disregard of human life, that you could not attribute it to anything else except malice aforethought. That act would be murder, though the party killed his best friend. He, without legal provocation, destroys the life of his fellow-man, commits murder. Now, I have defined to you the crime of murder.

There is another grade of felonious homicide, and that is called manslaughter. Observe the distinction. No one has the right to take the life of his fellow-man without legal excuse or provocation. But manslaughter is the felonious killing of a human being when it is done without malice—without a

formed design or premeditated intent—when it is done in sudden heat and passion. But bear in mind, gentlemen of the jury, that the heat and passion must be aroused upon a sufficient legal provocation—not a trifle. A man can not fly into a passion for a mere trifle, which is not calculated to stir the blood of a man of ordinary firmness and reason, and take the life of his fellow-man, and say that it was done in sudden heat and passion, and, therefore, was not murder. He who, for a mere trifle, takes the life of his fellow-man, if the provocation is not a sufficient one in law, in the opinion of the jury, then it is murder, because it is the reckless destruction of human life.

Where human life is taken in sudden heat and passion aroused upon a sufficient legal provocation, then, in tenderness to the frailty of human nature, the law reduces such killing one grade, and makes it manslaughter. The distinction between murder and manslaughter is, that in the one there is the presence of malice, and in the other there is the absence of it. If two persons meet and hot words follow, and that is followed by a combat which is calculated to stir the blood and arouse the passions, and in the midst of that struggle one takes the life of the other, then, in tenderness to the frailty of human nature, the law would say that such killing was manslaughter. In manslaughter there is an absence of formed design, an absence of intent to take human life, and it is done in sudden heat and passion, aroused upon sufficient legal provocation. Bear in mind that words do not even justify a battery, much less the taking of human life.

Now, we have those two grades of felonious homicide. Then we have excusable homicide, where no criminality attaches to it—as, for example, where life is taken by accident, the party taking the life being without fault, and not guilty of gross negligence. Where it is an accident pure and simple, and one unwittingly takes the life of another, there is no criminality in that. Excusable homicide exists, also, where one takes the life of his fellow-man in defence of his own life, or of some member of the family or household, and, under some circumstances, in defence of the life of a friend. Let this matter of self-defence be not misunderstood, and be not misapplied.

You are the ones who administer the law of homicide in its finality, so far as ascertaining the facts are concerned. You are the sole judges of the facts. I am not allowed to charge you upon the facts, and I cannot guide you nor aid you in determining the facts. I cannot do anything towards brushing away the sophistries of counsel. I cannot sum up the facts and present the matter in its plain light to you, by lopping off this superfluity and another. I am allowed only to expound the law, and, in cases of this kind, the judge is practically limited to defining the crime—which the jury, perhaps, can do as well as the judge. You are not responsible for the judgment. You are not responsible for the result. You are responsible for the ascertainment of a fact simply, and you are to say whether the act, under the law, is murder, manslaughter, or excusable homicide; that is for you to determine, and you are under oath, as sworn judges, to determine that fact.

Now, I desire to give you the law of self-defence, as it is fixed by our own Supreme Court, in language clearer and more forcible than I could use. I wish you to understand this law, so that you may not have an erroneous opinion of the law touching this matter of homicide in self-defence. In the case of the *State* v. *McGreer*, our Supreme Court uses this language: "To make out a case of self-defence, two things are necessary: 1. The evidence should satisfy the jury that the accused actually believed that he was in such immediate danger of losing his life, or sustaining serious bodily harm, that it was necessary, for his own protection, to take the life of his assailant." The evidence must satisfy you that he did so believe. That is not all: 2. "That the circumstances in which the accused was placed were such as would, in the opinion of the jury, justify such a belief in the mind of a person possessed of ordinary firmness and reason. It is not a question which depends solely upon the belief which the accused may have entertained; but the question is, what was this belief, and whether, under all the circumstances, as they existed at the time the violence was inflicted, the jury think he ought to have formed such a belief?" The true test is the opinion of the jury, after hearing all the circumstances, whether the

accused actually believed that such necessity existed, and whether, under all the circumstances surrounding the party at the time the violence was committed, he was warranted in forming such belief.

Besides the case of McGreer, in the 13th volume of our reports, there is a later case bearing upon this point. Our Supreme Court has manifested an anxiety to put this matter so clearly that judges and juries will make no mistake. In the more recent case of the *State* v. *Wyse*, in the 33d volume of our State Reports, the Supreme Court says: "The plea of self-defence rests upon the idea of necessity—legal necessity," &c. [Here the judge read from the bottom of page 594, in 33 S. C. Reports, to the middle of page 595.]

Such is the law laid down by our Supreme Court, and it is the law which has been laid down by the judges of America and old England for ages; and it is the law which we are called upon to administer. So that when we come to the matter of self-defence, bear in mind that he who puts in that plea of necessity must himself be without fault. In other words, it must be a necessity, which he has not himself brought about by his own wrongful conduct.

Now, I have expounded to you the law of homicide in so far as it is applicable to this case. You must apply it to the facts. You will take the whole testimony and examine it. You will satisfy yourself from the testimony where the defendant and the accused were that day. How long they were at Prewitts. What were the transactions of the day? Whether there were any circumstances in the transactions of the day leading up to this fatal rencounter or not? What occurred in that store? Who were in the store at the time of the difficulty between 8 and 9 o'clock? What was the transaction between the Irishman and Barrs, and what was the position of the defendant? What were his movements as he took the lamp or lantern up, and took out his pistol and went out? Who were out there? What was the condition of things out there? What transpired after he went out? How long was it before the deceased was shot? By whom was he shot? Under what circumstances was he

shot, and, if by the accused, what did the act amount to: murder, manslaughter, or self-defence?

One defence set up by the defendant is, that he didn't shoot the deceased at all—that it was done by some one else. If that be so, the accused, of course, is not guilty. The other defence is, that he shot him in self-defence. If the accused was himself without fault—if the accused did not bring on the necessity for shooting by his own fault—if he was wrongfully assaulted, and assaulted with such fury and in such manner as to make it appear actually to him that he was about to suffer death, or serious bodily harm, at the hands of Whetstone—if he took Whetstone's life under those circumstances, then a case of self-defence is made out. You are to determine all these matters. The accused is entitled to the benefit of all reasonable doubt which may arise. If you are satisfied, beyond all reasonable doubt, that the accused, on that day, took the life of Whetstone, without any legal excuse or provocation, under circumstances showing a reckless disregard of human life, under circumstances showing that it could have proceeded from no other motive than from that malice which I have described to you, your verdict will be guilty.

If you are satisfied, beyond a reasonable doubt, that the accused killed Whetstone with malice aforethought, your verdict will be simply guilty. The word guilty will cover the whole charge of murder. If, however, you are satisfied that he did an unlawful act in the killing of Whetstone, if you believe that he did kill him, but that he did it in sudden heat and passion, aroused upon sufficient legal provocation, and under circumstances which, in your opinion, should naturally have aroused his heat and passion, then your verdict should be guilty of manslaughter.

If you are satisfied that there was no felonious killing, but that he did it in defence of his own life, or to save himself from grievous bodily harm, he not being in fault, and being wrongfully assailed, then your verdict should be not guilty. Take the record, and find your verdict as you find the facts.

After a verdict of guilty, and before sentence, the defendant

made a motion for a new trial on the minutes of the court, which was overruled, and the defendant was sentenced to be hanged. From this judgment he appealed, on the following grounds:

1. Because his honor erred in forcing the defendant to trial, and overruling defendant's motion for a continuance, in the absence of two material witnesses, who had been duly subpœnaed, and after an affidavit containing what was expected to be proved by the said witnesses, if they were present, had been submitted to the solicitor, and he had refused to admit that, if the said witnesses were present, they would testify to what was stated in said affidavit.

2. Because his honor erred in charging the jury, as requested by the State, that "No provocation will excuse one of the crime of murder, when the weapon used indicates an intention to take life, unless such provocation is accompanied with unlawful violence, or an apparent intention to do great bodily harm."

. 3. Because his honor erred in charging the jury, as requested by the State, that, "When self-defence is pleaded, it must be proved by a preponderance of evidence," without further charging the jury that if, upon the whole testimony, they entertain a reasonable doubt as to any material point of the case, the defendant is entitled to the benefit of such doubt.

4. Because his honor erred in charging the jury that, "Now, gentlemen of the jury, I will endeavor to present to you, as succinctly as I can, the law applicable to the present case;" after he had instructed the jury that, "I charge you those propositions of law as correct," referring to defendant's requests.

5. Because his honor erred in charging the jury: "If two persons meet and hot words follow, and that is followed by a combat which is calculated to stir the blood and arouse the passions, and in the midst of that struggle one takes the life of the other, then, in tenderness to the frailty of human nature, the law would say that such killing was 'manslaughter;' as the words 'combat' and 'struggle' were calculated to mislead the minds of the jury."

6. Because his honor erred in charging the jury that, "I can not do anything towards brushing away the sophistries of counsel."

7. Because his honor erred in charging the jury that, "You are not responsible for the judgment—you are not responsible for the result."

8. Because his honor erred in charging upon the facts, in violation of the constitutional provision (article IV., section 26,) upon that subject, by using the following language to the jury: "And what was the position of the defendant? What were his movements as he took the lamp or lantern up, and took out his pistol and went out? Who were there?" &c.

9. Because his honor erred in refusing to grant a new trial, upon the ground that, during the progress of the said trial, and before its close, one of the chief prosecuting witnesses approached and talked with the jury, out of the court, regarding said case, and endeavored to influence their decision against defendant.

*Messrs. Izlar, Glaze & Herbert, Raysor and Summers,* and *S. G. Mayfield,* for appellant.

*Mr. Jervey,* solicitor, contra.

February 23, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. Jefferson M. Way, having been convicted of murder and sentenced to death, now appeals to this court on nine grounds of appeal. The report of the case should contain the charge of the Circuit Judge and the grounds of appeal. Such being the case, we will not reproduce them here.

The first ground relates to the denial of the defendant's motion upon the absence of witnesses to continue the case. It seems that two of the witnesses had entered into a recognizance conditioned for their appearance to testify at the trial, and two had been served with subpœna tickets for that purpose. It was the second term after indictment found, the trial having been postponed at the first term on defendant's motion. This matter of continuance is confined to the wise discretion of the Circuit Judge, as this court has repeatedly and uniformly held.

In the second ground of appeal, exception is taken to the

Circuit Judge having charged, as requested by the solicitor, that "no provocation will excuse one of the crime of murder, where the weapon used indicates an intention to take life, unless such provocation is accompanied with unlawful violence or an apparent intention to do great bodily harm." This charge of the judge is sound in law. See cases of *State* v. *Jackson*, 32 S. C., 27–43; *State* v. *Levelle*, 34 *Id.*, 120–124.

Exception is next taken (third ground) to the charge of the judge of the request of the solicitor, "When self-defence is pleaded, it must be proved by a preponderance of evidence," because he did not add to such words, language to the effect that if, upon the whole testimony, the jury entertains a reasonable doubt as to any material point, the defendant must be accorded the benefit of such doubt. The appellant admits the proposition of law to be correct, but insists that these words should have been added. By reference to the "Case," it will abundantly appear that the Circuit Judge was exceedingly careful to vouchsafe in his charge the benefit of all doubts in favor of the prisoner. This may be done at the time the request is passed upon or afterwards, provided the jury is not left in any doubt as to the application of the principle.

We will next notice the fourth ground of appeal, which complains that, after the judge had charged the fourteen requests of the defendant as sound in law, he immediately stated that he would himself succinctly state the law applying to the case. It will be found that, in the judge's charge to the jury, he states that he will suspend his own presentation of the law until he has passed upon the requests to charge of the solicitor and the defendant. Having finished this, he then announces that he will continue his own presentation of the law. We are unable to see how this impinges upon the rights of the defendant. If complaint were made that, in the judge's subsequent charge, he had impinged upon the requests to charge that he had announced to the jury were the law, we could see more force in this objection; but such is not the force of appellant's exception. We see no error here.

The next (5th) exception objects to the use of the words, "combat" and "struggle," in a further part of the judge's

charge, when he is endeavoring to assist the jury to understand his definition of manslaughter. We have carefully considered this matter, and for this purpose have carefully examined the charge of the judge as found in the "Case," to see if this exception was well founded. In candor, we are obliged to say that we cannot see its force. "Combat" and "struggle" are not unusual words in our every day life, and the jury may very well be understood to fully comprehend their meaning. Certainly no exception was taken to their use at the time. It is a very safe practice to call the judge's attention to anything likely to mislead at the time it occurs, so that any ambiguity of language may be corrected. Although this was not done, there was no error here.

The next exception (sixth) relates to the use of words by the Circuit Judge: "I cannot do anything towards brushing away the sophistries of counsel." When we consult the charge of the judge, we find that these words occur when he is stating exactly and fully the restrictions of the law upon the judge endeavoring to comment upon the facts in testimony to the jury. There is not the slightest indication of any personal application of these words to any particular counsel. We cannot see that the defendant was in anywise prejudiced by this remark.

The seventh exception is next in order, and relates to the use of the words by the judge: "You are not responsible for the judgment; you are not responsible for the result." Of course, juries are not responsible for the judgment or the result, but sometimes it becomes highly important to have them realize this truth. There is no error here.

As to the eighth ground of appeal, it should suffice that the "Case" does not give us a sight of the testimony at the trial. We are unable to see what facts were admitted by the defence or the State. In the form in which these questions are asked, as serving to stimulate an apprehension by the jurors of the testimony offered before them, we cannot say there was any error.

Lastly, the ninth exception relates to something that occurred after the trial had begun, in this wise: The defendant

made an affidavit that he saw one of the prosecuting witnesses, after the adjournment of court, walk out of the court house with one of the jurors, and that they had a conversation; and an affidavit of the constable was to the same effect. Neither deponent stated what was said in the conversation; indeed, they did not know. It should be remarked that the trial lasted more than one day, and the jury were allowed to separate after the close of each day's work. While, of course, it is highly necessary that the verdicts of juries should be accepted as the result of the unbiased judgment of the twelve members thereof, and, while it is highly improper that any conversation should be had with a juror while he is charged with the trial of a cause upon the matter undergoing investigation, still the practice is sustained in this State of allowing jurors to separate after the day's session of the court, even in murder cases; and, unless it was established that some corrupt act, or highly improper influence, had been exercised to control a juror in reaching his verdict, it would not be error on the part of a Circuit Judge to refuse to set aside a verdict upon the bare suspicion that something improper had occurred.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed,[1] and that the case be remanded to the Circuit Court for Orangeburg County, for the purpose of having a new day assigned for the execution of the sentence heretofore imposed.