KOON v. SOUTHERN RY.

1. EVIDENCE—DIAGRAM.—It is not essential to the admissibility of a diagram that it should have been made by the witness; it is sufficient, if it is a correct representation of the thing to be described.
2. DISCRETION.—LEADING QUESTIONS are within discretion of trial Judge.
3. EVIDENCE—EXPERT OPINION.—It is competent for a foreman of bridge building, acquainted with pile drivers and their use, to give his opinion as to the safety of an appliance used on the machine.
4. NONSUIT—JURY—APPLIANCES—FELLOW-SERVANT.—There being some

evidence by plaintiff that injury was the result of a ·defective appliance, nonsuit was properly refused; and there being evidence by defendant showing that the appliance was selected by ˙a fellow-servant of the injured under instructions of the master, but without inspection by him, it was proper for the jury to determine whether the injury was caused by a˙ defective appliance negligently furnished by the master, or by the negligent use of a proper appliance by a fellow-servant.

5. MASTER—MACHINERY—APPLIANCES.—Jury were instructed that it was the duty of the master to furnish machines, tools and appliances that are reasonably safe to work with, and not that the master was liable, irrespective of whether he had exercised ordinary care and prudence in furnishing and repairing them.

6. NEW TRIAL.—Refusal of new trial based on sufficiency of evidence is not reversible error, unless there is a total absence of evidence to sustain the verdict.

Before ALDRICH, J., Spartanburg, March term, 1903. Affirmed.

Action by M. A. Koon, administrator of H. W. Koon, against Southern Railway. From judgment for plaintiff, defendant appeals.

*Mr. C. P. Sanders,* for appellant, cites: *As to proximate cause:* 33 Md., 542; 6 Am. St. R., 521; 78 Cal., 517; 52 N. H., 552; 65 Me., 449; 95 U. S., 117; 27 Am. R., 656; 19 Ency., 301. *Master is not liable for negligence of fellow-servant:* 45 S. C., 391; 61 Wis., 163; 111 Pa. St., 597; 155 Mass., 200; 91 Va., 668. *Negligence of master must be proximate cause of injury:* 21 S. C., 468; 45 S. C., 281; 57 S. C., 433. *Servant assumes risk of negligence of fellow-servant:* 1 McM., 385; 25 S. C., 128; 39 S. C., 507. *Master is not responsible for negligent selection by servant:* 46 Am. St. R., 460; 126 Pa., 387; 96 Mich., 464; 160 Mass., 152; 149 N. Y., 142; 148 Mass., 533; 85 F. R., 759. *Error to admit incorrect diagram of pile driver:* 75 Am. St. R., 494; 188 Pa. St., 496; 77 Conn., 244; 6 A. & E. Ry. Cas., 174; 83 N. Y., 464; 118 N. Y., 77. *As to expert evidence*

*as to appliances:* 1 Thomp. on Trials, sec. 588; Rog. on Ex. Tes., secs. 15, 17; 96 N. Y., 408; 49 Mo., 274; 33 Minn., 62; 76 Ga., 532; 126 Pa., 141; 78 Ill., 32; 41 Conn., 252; 66 Wis., 521; 58 Vt., 498; 8 Aden, 408; 121 Mass., 446; 59 S. C., 314.

*Messrs. Evans & Finley,* contra, cite: *As to diagram as evidence:* 57 S. C., 448. *Whether question is leading is for trial Court:* 61 S. C., 22. *As to duty of master in furnishing appliances:* 52 S. C., 445; 60 S. C., 18.

April 29, 1904. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff, as administratrix of H. W. Koon, deceased, brought this action for damages for alleged wrongful death of intestate, through negligence of defendant, in failing to provide safe appliances, while he was engaged as carpenter and bridge builder for defendant, in constructing a bridge or trestle on defendant's railroad, in Cherokee County, in August, 1900. Besides a general denial, the defense was negligence on the part of a coservant engaged in the same department of labor. A trial before Judge Aldrich and a jury resulted in a verdict and judgment for $10,000 in favor of plaintiff, from which defendant now appeals, on exceptions to rulings as to evidence, refusal of nonsuit, charge to the jury and refusal of motion for new trial.

1. The first and third exceptions assign error in permitting a diagram or drawing of the pile driver and the machine at which Mr. Koon was working when he was killed, to be exhibited, and a witness to be interrogated in connection with the same, the drawing not having been made by the witness and not shown to be a correct representation. It appears that the witness, who was handling the pile driver at the time the piece of timber fell from overhead and struck Mr. Koon, testified that the diagram or drawing was a correct representation, although he did not

make it.   It is not essential to the admissibility of a diagram, drawing or picture of a thing proper to be described to a jury, that it should have been prepared by the witness testifying; it is admissible after evidence that it is a correct representation of the thing sought to be described.   *Chemical Company* v. *Kirven,* 57 S. C., 448, 35 S. E., 745.

2. The second, fifth, sixth, seventh and eighth exceptions complain that leading questions were permitted to be asked by plaintiff's counsel.   These exceptions cannot be sustained, as it has very frequently been held that it is within the discretion of the trial Judge to permit leading questions, and we see nothing in the record to indicate any abuse of such discretion.   *State* v. *Marchbanks,* 61 S. C., 22, 39 S. E., 187.

3. The fourth exception alleges error in permitting the witness, W. W. Wrister, to be examined as to whether, in his opinion, the pile driver and appliances as used at the time of the injury was safe or not.   Several questions on this line were asked, but the witness did not answer, until finally the following questions were asked and answers given: "Q. It has been testified that the piece was broken off, and Sig was put up there with the beam to take the place of that rest.   Now, I want you to state, as a man familiar with the working of this machine, and a careful, prudent man, whether you would regard that as a safe appliance?   Mr. Sanders: I object to that.   It is a matter of opinion.   Court: I think the witness is an expert, and can answer the question.   Q. How would you regard that? Would it be safe as the other?   A. No, I should not say it would be as safe altogether; but, then, it has been used time and again, before and afterwards. * * * Q. You say you would not regard that as safe a machine as the one that had that other appliance?   Mr. Sanders: I object on the same ground.   A. No, I should think not so.   It is not as safe."

A preliminary examination had shown that the witness was a foreman of bridge building on the Southern Railway, and was familiar with the pile driving machine in question,

having used it. We think the matter was within the sphere of expert testimony. It is true, that the ordinary affairs of life, affairs within the common experience of ordinary men, matters which can be made intelligible to a jury by merely detailing the pertinent facts, are not matters warranting expert opinion, but it could hardly be said that a pile driving machine and appliances are so within common experience and comprehension as to render expert testimony as to their safety wholly incompetent.

4. The ninth exception charges error in not granting the motion for nonsuit, where, as alleged, the uncontradicted evidence showed: (1) that the pile driver and appliances were reasonably safe. (2) That if there was any negligence at all, it was that of a fellow-servant in the same department of labor. The rule has been very frequently stated that nonsuit is not allowable, if there is any evidence tending to support the plaintiff's case. With this purpose alone we will now notice the testimony. It appeared, that R. J. Bates, as bridge foreman, was present on the occasion superintending and directing the pile driving, as representative of defendant company. When the engine by cable attached hoisted the heavy iron hammer or rammer to the top of the "leads," preparatory to letting it fall to drive the pile, a workman, Sig Littlejohn, was stationed on the "leads," whose duty it was to place a piece of timber under the hammer as a hammer rest while it was suspended, and when at a given signal the hammer was raised for the drive, it was his duty to shove this piece of timber out of the way of the hammer in its fall. The "leads," we suppose from the testimony, was a structure whereon the hammer was hoisted to the desired height above the pile, which aided in keeping the pile in proper position, and served to guide the fall of the hammer to the head of the pile. In order to prevent this piece of timber, which was of oak 4x4 inches in width and about four feet long, from falling to the ground at each drive, thereby causing inconvenience in climbing down the "leads" for it and back again, as well as

danger to those working below, it was usual to attach it to a short rope and fasten it to the "leads," so that it would swing out of the way on the rope hinge, as it were, and yet remain in convenient reach. There was some testimony, not very clear, however, that this contrivance was a substitute for the hammer rest originally attached to the machine, which had been broken off. The machine, however, had been operated for quite a while with this contrivance with safety. On the occasion in question, the deceased was working below on the "leads," assisting in the pile driving. The hammer was raised for the drive, and Sig Littlejohn shoved the hammer rest out and the timber dropped, breaking the rope attachment, and striking Mr. Koon, knocking him off the "leads" upon the rocks below, producing injuries from which he died.

Mr. J. V. Goodnight, the engineer in charge of the pile driving engine at the time, testified in behalf of plaintiff in part as follows: "Q. Was Mr. Bates there? A. Yes, sir. Q. Did you see the rope on that beam? A. Yes, sir; it was some strands of rope. Q. You say some strands of rope? A. One part of the rope had been ravelled out. Q. That rope was tied on to this beam that Sig Littlejohn pulled out? A. Yes, sir. Q. What was the condition of that? A. I do not know; it was just some strands of rope. He had drove a spike in this timber where they land the hammer on, and also tied it to the 'leads' in some way. Q. That he pulled out when he raised the timber? Took his hand and shoved it out and the strands broke? A. Yes, sir." On cross-examination, the witness testified: "Q. You said something about some strands—when did you see these strands of rope? A. I saw the strands that day. Q. After the accident? A. Yes, sir; a man named Mr. Knobles, taken the strands off the piece of timber. Q. You see him do it? A. I do not recollect that I saw him do it. Q. He told you he got them off the timber? A. Yes, sir. Q. So, then, it is hearsay that it came off the timber? A. It looked like the same strands I seen on the timber. Q. When did you see them on the

timber? A. They were on there that day. Q. After the accident? A. I did not see them after this happened—I didn't notice the strands after Mr. Koon was killed. Q. You see them before? A. Yes, sir; I seen the strands a while before the timber was put in the 'leads.' Q. Who put them there? A. I suppose this darkey that was working on the 'leads.' Q. Do you know whether or not there was any other rope about there? A. I didn't see any. Q. I mean, all along that supplied the machinery and timber, etc. A. Had a lot of old rope that had been used with machinery. Q. They were in different sizes? A. They were large ropes from an inch up to two inches. Q. Didn't you have some smaller than an inch? A. I don't recollect. Q. The business of this man up there was to place the timber in, as I understand, under the hammer, then take it out and see that it didn't fall on anybody? A. Yes, sir, the darkey." On redirect examination, the witness testified: "Q. You say you had a lot of old ropes there? A. Yes, sir. There was a lot of old ropes carried with the machine, worn out and thrown in the car. Q. And then you have some of the strands of those old ropes? A. I didn't see them get the strands from the rope, but it looked something like that." This was some testimony that the injury resulted from a defective or unsafe appliance furnished by the defendant.

When a nonsuit has been refused and the defendant furnishes evidence which, in connection with plaintiff's evidence, makes a case which should be submitted to the jury, it is proper for this Court to decline to reverse the refusal of nonsuit, even though the plaintiff's evidence in chief alone would not warrant submission to the jury. *Hicks* v. *Southern Railway,* 63 S. C., 567. The evidence submitted after refusal of nonsuit tended to show that Mr. Bates, the representative of the defendant company, directed Littlejohn to get a rope and tie the hammer to the "leads," to prevent the danger of its falling, and that Littlejohn did as directed, but himself selected the piece of rope from the rope in the car, which, however, Mr. Bates had not inspected except

casually as he passed by the car that morning. Both Bates and Littlejohn regarded the rope as sound, and Mr. Bates testified that there was perfectly sound rope in the car suitable for such use. There was also testimony tending to show that the rope did not slip or come untied, but broke by the mere fall of the timber, as it was shoved out from under the hammer for the first time after being tied.

Appellant argues that Littlejohn having selected the rope, when safer rope was available, the injury was the result of the negligence of a fellow-servant. It may be conceded that Koon and Littlejohn were fellow-servants in the same department of labor, in so far as they were engaged together in the work of pile driving; but the furnishing of appliances was the master's duty, and in so far as Littlejohn prepared the appliances for use under the direction of the master, he was in the performance of the master's duty in this regard, and his negligence in selecting material and constructing an appliance would be the master's negligence. It was, therefore, clearly a case in which it was proper to leave it to the jury to determine, whether the injury resulted from a defective appliance negligently furnished by the master, or from the negligent use of a proper appliance by a fellow-servant.

5. The tenth, eleventh, twelfth, thirteenth and fourteenth exceptions allege error in the following portions of the instructions to the jury: "The jury are charged that it is the duty of the master (in this case the railroad company) to provide suitable machinery and appliances and to keep them in proper repair. The employee has the right to assume that the master has discharged his duty in this respect, and is not bound to exercise care in ascertaining whether the master has so acted, and if the employee sustain injury by reason of such failure to provide suitable machinery or appliances, or to keep the same in good repair, the jury should find a verdict for the plaintiff. It is the duty of the master to provide his servants with safe and suitable machinery and appliances necessary for their work,

and he must also keep them in repair, and is liable to the servants for injury, resulting to them for his negligence in this matter, or for the negligence of other servants employed by him to perform the master's duty. If the master attempted to repair a defective machine, and in so doing makes use of unsafe appliances and unfit material, and such unsafe appliances and unfit material were the cause of plaintiff's intestate losing his life, then the jury should find for the plaintiff. A servant who enters the employment of another, assumes the ordinary risk of business, but this does not include the risk of working with unsafe appliances, for the master is bound to supply his servants with sound and safe appliances; and if the servant is injured or loses his life by reason of the failure of the master to furnish safe and suitable appliances, the jury should find for the plaintiff."

The objection urged against these isolated sentences of the Judge's charge is that they fixed a higher standard of care than the law required, and made the master liable, irrespective of whether he had exercised ordinary care and prudence in furnishing and repairing appliances. An examination of the charge as a whole shows that the criticism made has no foundation. This is particularly manifest in what the Court said in connection with defendant's first request to charge. The Court said: "First request of defendant is as follows: 'The master is not required to furnish his servants with a perfect machine or with one of the most approved and latest patterns. All that the law requires of a master in this respect is to furnish machines, tools and appliances that are reasonably safe to work with. If the master used reasonable care to furnish servants with machines and appliances that are reasonably safe, then he has done all that the law requires in this respect.' That is correct, generally speaking, and an employer or, as we frequently term, a master, when he employs servants or laborers, is not required to do what an insurer would do—that is, guarantee that his machines and appliances are beyond all doubt safe and suitable. The duty of the master is to provide and use ordinary care

in making provisions that the machinery and appliances are reasonably safe for the work expected of the employee, and to keep and maintain those machines and tools and appliances in a reasonably safe and suitable condition for work."

6. The four remaining exceptions relate to the refusal of a motion for new trial, and make the point that the Court, having correctly charged the law in the particulars named in the exceptions, erred in not granting a new trial, on the ground that the jury had failed to follow instructions and had failed to make proper application of the law to the uncontradicted facts. This Court having no jurisdiction to pass upon the force or sufficiency of evidence in a case at law, has in numerous cases held that a refusal of new trial based upon the evidence is not reversible as error of law, unless there is a total absence of evidence to sustain the verdict. In discussing the motion for nonsuit, we have shown that there was not a total absence of testimony to support a verdict.

The judgment of the Circuit Court is affirmed.