## 7155

### STATE v. STOCKMAN.

1. EVIDENCE.—A LEADING QUESTION is within the discretion of the trial Judge and there is no abuse of discretion shown here, as question was not objected to as leading and the fact testified to was covered by other evidence not objected to.

2. IBID.—IBID.—Counsel should not seek to have his own witness explain his testimony by asking a leading question.

3. IBID.—IRRELEVANT.—The issue being whether the witness met defendant and another at a certain time and place and whether they were apparently drunk, how many wagons were in witness' company, who had the wagons, and whether defendant got back his horses which had broken away, are irrelevant.

4. IBID.—THREATS.—That one person thought himself of better stock than another might tend to show prejudice, but is not a threat and would more likely produce aloofness than a personal encounter.

5. IBID.—IRRELEVANT.—That a witness for defense had been prosecuted by deceased for killing his dog is competent to show bias, but that deceased sometimes killed dogs is irrelevant.

6. IBID.—OPINION.—A boy sixteen years of age after stating the facts surrounding a homicide should not be permitted to give his opinion as to what would have happened if his father had not shot deceased at the time he did.

7. IBID.—IBID.—REPLY.—Evidence tending to show that deceased was met in the road on the day of the homicide by the witness and he appeared sober, was strictly in reply to defendant's evidence on the same point, and is a subject on which the opinion of non-expert witnesses is admissible. Subjects on which opinions of non-expert witnesses are admissible stated.

8. IBID.—CONTRADICTION.—In order to contradict a witness as to his statement that he was at a particular place at a certain time, it is not necessary to lay the ground for contradiction as in cases of declarations.

9. IBID.—REPLY.—Testimony by a witness that on a certain day he bought some goods at store of deceased from a certain clerk and bookkeeper and had them charged and as he went away on the road near the store deceased made a threat against defendant, renders competent in reply the books of deceased to show on what day the goods were bought and evidence showing deceased was at another place at that time.

10. IBID.—CONTRADICTION.—A witness may be contradicted as to a declaration to an unknown person, if he was sufficiently adviseed as to

the identity of the conversation to give him a fair opportunity to recollect and deny or explain.

11. IBID.—OPINION.—Here the Court having ruled the witness could give an opinion as to the cause of a wound, if he was familiar with such wounds, the witness having testified, it is assumed, he had such special knowledge. Is the same degree of expert knowledge required to give an opinion on a collateral matter as on the main issue?

12. SELF-DEFENSE is an affirmative defense and must be established by the preponderance of the evidence, but State must establish the guilt of the defense beyond a reasonable doubt.

13. IBID.—The circumstances under which a defendant takes the life of another to support the plea of self-defense must be such as would justify a belief of the necessity of taking life in the mind of a person possessed of ordinary firmness and reason.

14. IBID.—In order to justify one assaulted with a gun or pistol in taking the life of his assailant, whether assailant intended to take his life or not, he must be without fault in bringing on the difficulty.

15. IBID.—HOME—CASTLE.—Under the evidence in this case it was proper for the Court to limit the doctrine of defense of the castle to immediate danger, not to apply after the danger has passed.

16. THE CHARGE in this case is not subject to the criticism that it conveyed to the jury the opinion of the Judge that the defendant was guilty.

17. REHEARING refused.

Before DANTZLER, J., Lexington, Summer Term, 1907. Affirmed.

Indictment against S. W. Stockman for murder of Hampton Hartley. From sentence on verdict, defendant appeals.

*Messrs. Graham & Sturkie, W. H. Sharpe, Johnstone & Cromer* and *J. Wm. Thurmond,* for appellant.

*Messrs. Graham & Sturkie* cite: *Rules of evidence in criminal cases:* 12 S. C., 96. *Opinion evidence:* 59 S. C., 311; 19 S. C., 521; 25 S. C., 24; 32 S. C., 127. *Self-defense:* 13 S. C., 464; 29 S. C., 44; 66 S. C., 473. *Defense of castle:* 79 S. C., 149; 15 Sup. Ct., 962; 33 S. C., 124.

*Request not charged:* 72 S. C., 202; 81 S. C., 379; 80 S. C., 387.

*Messrs. Johnstone & Cromer* cite: *Opinion on the point in issue:* Wharton's Law of Ev., sec. 452; 1 Green. Ev., 14 ed., sec. 440; Proffatt on Jury Trials, sec. 228; 32 S. C., 400.

*Mr. J. Wm. Thurmond* cites: *Defense of castle:* 79 S. C.,148; 15 Sup. Ct., 962; East Pleas, 271; Foster Crown Cas., 273; 2 Whar. C. L., sec. 19; 33 S. C., 124.

*Solicitor George B. Timmerman* and *Messrs. Efird & Dreher* and *E. L. Asbill,* contra.

*Messrs. Efird & Dreher* cite: *Contradiction as to fact:* Wig. on Ev., secs. 1000, 1025. *Contradiction of declarations to one not known:* 79 S. C., 179; 78 S. C., 83. *Self-defense:* 38 S. C., 346; 76 S. C., 91; 72 S. C., 223; 68 S. C., 133; 72 S. C., 74. *Defense of castle:* 68 S. C., 133; 79 S. C., 144.

*Mr. Asbill* cites: *Cumulative evidence by leading question:* 53 S. C., 535; 61 S. C., 22; 62 S. C., 151; 65 S. C., 541. *Opinion evidence:* McKelvey on Ev., sec. 125; 25 Minn., 85; 63 Conn., 26; 19 S. C., 68; 117 Mass., 122; 49 N. H., 399; 56 N. H., 227; I Whar. Ev., sec. 511; 1 McM.; 56; 31 S. C., 232; 57 S. C., 449. *Defense of castle:* 72 S. C., 202.

April 9, 1909. The opinion of the Court was delivered by

Mr. Justice Jones. The defendant, S. W. Stockman, at his residence in Lexington county on December 29, 1906, shot and killed his son-in-law, Hampton Hartley. Upon an indictment of murder he was tried at Summer Term, 1907, General Sessions for Lexington county, Judge Dantzler

presiding, convicted of manslaughter with recommendation to mercy and sentenced to seven years' imprisonment in the State Penitentiary.

The defendant contended that Hartley entered his home under the influence of whiskey and was guilty of impropriety of conduct toward one of defendant's daughters, a sister of Hartley's wife, and was rebuked therefor by defendant and ordered to leave the house, that thereupon, Hartley with a buggy whip made an attack upon defendant and his nephew, J. W. Taylor, who was visiting at the house, that Mrs. Stockman got Hartley to leave the house, that he went some distance and started back again towards the house, meeting Taylor near the gate and assaulted Taylor with whip in left hand and pistol in right hand, that Hartley, after knocking Taylor down, pointed his pistol at defendant, who was then in the yard with a shot gun in hand, and threatened to kill defendant, whereupon defendant shot and killed Hartley in defense of his person and habitation.

The theory of the State's case was, that whatever may have taken place in the house, Hartley left it and went out of the gate into the road, that Taylor came out of the gate and went up to Hartley and they commenced fighting, Taylor with his fist and Hartley with a buggy whip held in his right hand, that Hartley drew no pistol, his pistol being found in his right hip pocket under him with his overcoat buttoned up, that defendant fired upon Hartley while he was fighting Taylor, the line of fire being from the rear at an angle of about forty-five degrees, some of the shot striking Hartley in the right temple, some striking behind and in front of the right ear.

The defendant presents thirteen exceptions to the ruling of the Court as to the admissibility of certain testimony and eight exceptions to the charge given the jury.

1. State's witness, Elzy Long, testified as to the position of Hartley's body on the ground where he fell and the

Solicitor, with reference to the position of his hands, asked the question: "Were they or not lying by his side?"

1    Defendant's counsel objected without stating any reason, and the Court ruling the question competent, the witness answered, "Yes." Appellant claims that the question was leading and prejudicial. Conceding that questions beginning "whether or not, etc.," may be leading in certain circumstances, such questions are in the discretion of the trial Court and will rarely be cause for reversal. *State* v. *Marchbanks,* 61 S. C., 22, 39 S. E., 187; *Koon* v. *Southern Ry.,* 69 S. C., 104, 48 S. E., 86. There is nothing to show abuse of discretion nor prejudice to appellant. The position of the hands of deceased was fully brought out in other testimony given previously and afterwards by other witnesses. Further the trial Court was not informed that the question was objected to as leading and had no opportunity to have the question properly framed.

2. Defendant's witness, Pick Sullivan, testified that John Wingard, a witness who was present at the homicide and testified for the State, told witness at a house on McCarthy's place a few days after the killing, that he went behind the shed and did not see the killing. Defend-

2    ant's counsel asked, who was living in that house and witness answered, "Mr. Wingard." Then counsel asked: "You mean to say that Wingard was living in this house where this conversation took place?" The witness answered, "Yes," when the solicitor objected and the Court sustained the objection as to what he meant to say, saying to defendant's counsel: "He is your witness, let him state." There was no error and no prejudice. As the witness had stated without objection that Wingard was living in the house where the conversation occurred, the point seems very immaterial.

3. State witness Wingard having denied that he and Hartley were drunk on that day previous to the homicide, when riding together in a buggy leading two mules, and

having testified that he did not, on that occasion, meet Simeon P. Alewine in the road, Alewine, for the defense, testified that he did meet them in the road apparently drunk, that the horses had broken out of the buggy. Counsel for defendant asked: "Did he get them?" and the witness answered, "Yes." The Court asked counsel, "How is that relevant?" Counsel did not think it strictly relevant, but proceeded to ask the witness whether he (witness) was traveling in a wagon, which was answered, and how many wagons he had, which was answered, and then, finally, who had the wagon, when the Court said: "All that is irrelevant." The third exception complains of this ruling. It is manifest that the Court was correct and that the ruling in no wise excluded the real matter sought to be shown, that is, whether Alewine met Wingard and Hartley at the time mentioned and that they were apparently drunk.

4 and 5. The fourth and fifth exceptions are based upon the following from the case:

"Q. Did you know the late Hamp Hartley? A. Yes, sir. Q. Did you hear him make threats against Stockman? The Solicitor: We object. The Court: Objection sustained; that is a conclusion. Q. (By Mr. Graham) Did you hear him say anything about Stockman? A. Yes, sir; I heard him speak about him. Q. What did he say? A. I heard him say that he considered himself of better stock than Stockman. The Solicitor: We object. The Court: Yes, sir, strike that out. Q. Give me the words he used? A. He said if Stockman fooled with him he would shoot him the same as a rattlesnake. Q. How long before Hartley was killed did you hear him say that? A. I suppose it was over a year. He talked and ran on."

The fourth exception is based upon the first ruling of the Court above. It is proper in giving evidence as to threats for the witness to state the language, or the substance of the language, used by the declarant, so that Court and jury may

determine whether there was, in fact, any threat and what was the nature thereof. The appellant met this view later by having the witness state the language constituting the threat and hence there is no ground for objection.

Under the fifth exception it is contended that it was harmful for the Court to strike out the statement that Hartley said he considered himself of better stock than Stockman, as the statement tended to show the mind and feeling of Hartley towards the defendant. Where there is some evidence tending to support a plea of self-defense in a trial for homicide, it is competent, for the purpose of showing that the deceased was the aggressor, to introduce evidence reasonably tending to show that deceased had hostile feelings towards defendant at the time of the encounter, such as former threats to injure, quarrels or difficulties, assaults and the like. *State* v. *Emerson,* 78 S. C., 90, 58 S. E., 974. The trial Court may well have supposed that the particular matter under consideration could not reasonably tend to show such a hostile state of mind as would prompt or explain a personal assault upon the deceased. Generally and naturally a feeling of superiority of birth, or social superiority, would tend to produce aloofness rather than a personal encounter. The testimony would at most tend to show that deceased "had a prejudice" against defendant and falls short of being a threat. *State* v. *Wyse,* 33 S. C., 591, 12 S. E., 556.

6. The solicitor having, on cross-examination of the defendant's witness, Hair, brought out the fact that the witness had been prosecuted by the deceased for killing his dog, with a view to show bias—defendant's counsel asked the witness whether the deceased sometimes killed dogs. The Court correctly ruled the matter irrelevant.

7. It is contended that there was error in refusing to allow the defendant's witness, Eugene Stockman, to answer the question: "State if your father had not killed him at

the time he did what would have happened?" The question involved the mere opinion of a lad of sixteen years upon the vital issue in the case, as to what the deceased would have done. This does not fall within that class of cases which allow a non-expert witness to give his opinion after detailing circumstances, as for example, as to time, distance, and such matters as cannot be made intelligible to the jury, except as interpreted by the impression made on the mind of the witness at the time, as in *Jones* v. *Fuller,* 19 S. C., 66; *Ward* v. *Ry. Co.,* 19 S. C., 521; *Bridger* v. *Ry. Co.,* 25 S. C., 24; *Harmon* v. *Ry. Co.,* 32 S. C., 127, 10 S. E., 877; *Easler* v. *Ry. Co.,* 59 S. C., 311, 37 S. E., 938. What the deceased was doing or threatening to do when he was slain was an issue and the witness testified fully as to all the circumstances, the meaning of which could not be made plainer by his opinion, and the inference to be drawn from the circumstances was peculiarly for the jury.

8. The Court allowed State witness T. S. Nichols to state in reply that he met the deceased and Wingard in a buggy on the road from Lexington to Summit the day of the homicide and that they appeared to be sober. It was objected, (1) that this was not in reply, and (2) that it involved the opinion of the witness. The ruling was correct. The testimony was in reply to the testimony brought out by the defendant that deceased and Wingard were drunk while traveling that same road that day. Whether one is drunk or sober at a particular time is one of those matters which involve the statement of the impression or belief in the mind of the witness, produced by the various circumstances occurring at the time and falls within the rule of the case of *Jones* v. *Fuller* and other cases cited, *supra.* Questions of identity, handwriting, quantity, value, weight, measure, time, distance, velocity, form, size, age, strength, heat, cold, state of sickness or health, disposition, temper, anger, fear, excite-

ment, intoxication, and generally where it is not practicable to put the jury in possession of all the facts as they appeared at the time upon which the opinion is grounded—may be subject matter of non-expert opinion. Elliott on Evidence, sec. 676, sec. 678, citing, among cases as to intoxication, *Edwards* v. *City of Worcester* (Mass.), 51 N. E. Rep., 447; *West Chicago Ry. Co.* v. *Fishman* (Ill.), 48 N. E. Rep., 447. Similar testimony was allowed on behalf of defendant and the ruling was fair, and consistent with the ruling discussed under the seventh exception.

9. The Court allowed Sarah Wingard, witness for the State, to testify in reply that Pick Sullivan was not at her house on Sunday after Hartley was killed, Pick Sullivan having testified as to a conversation with J. W. Wingard at that house on that day.

It was objected that no foundation had been laid for a contradiction. The Court correctly ruled that the question was not of that class of contradictions by previous statements of a witness as required the laying of a foundation. It was a mere contradiction of Sullivan's testimony at the trial by the statement of a fact which, if true, would make it impossible that Sullivan's testimony could be true. Sullivan having testified that he was at the house at the time mentioned, did not need to be advised that such statement would be contradicted.

10. Charles Howard testified, for the defense, that he heard deceased Hartley in August, 1905, in the afternoon, before the arrival of the train from Columbia and about two and a half miles from Summit, in Lexington county, declare that he would kill the defendant; witness fixed the day of the declaration as the time, in August, 1905, when he purchased some goods at Hartley's store from Socrates Keisler, the clerk and bookkeeper, and had them charged. The solicitor was allowed to show in reply by Keisler that he sold and charged goods to Howard on August 31, 1905, and on no other day in that month,

with the purpose of showing that Hartley was in Columbia, S. C., at the time mentioned. There was no error in this. The testimony was strictly in reply.

11. For the same reason there was no error in allowing witness, C. M. Asbill, to testify in reply that Hartley was in Columbia, S. C., on the afternoon of August 31, 1905.

12. The testimony of J. W. Taylor was taken at a former trial of this case and, he having afterwards died, the same was introduced on this last trial. Taylor having testified that Hartley was some feet from him after knocking him between the wheels of a buggy and was pointing his pistol at Stockman when Stockman shot him, the solicitor sought to contradict Taylor by showing that he had made a different statement to F. D. Shealy on Saturday after the killing, in the road close to the place of the difficulty. Taylor admitted meeting a man that day who was driving two mules and wagon, but stated that he did not know whether it was Shealy or not, and denied that he said to the man on that occasion that when Stockman fired Hartley was striking him (Taylor) and that it was a wonder Stockman had not hit him (Taylor). Shealy testified that such statement was made to him by Taylor at the time and place named.

It is objected that the foundation for contradiction was not sufficiently laid. We think the witness was sufficiently advised as to time, place, person and subject matter of the proposed contradiction. The fact that he did not know the name of the party as F. D. Shealy did not render the question incompetent, if the Court was satisfied that the witness was sufficiently advised as to the identity of the conversation with another to give him a fair opportunity to recollect, so as to deny or explain. *State* v. *Hampton,* 79 S. C., 182, 60 S. E., 669. It appears that Taylor was also indicted in this case, and, in that view, on the former trial it was not necessary to advise him of the purpose to contradict by previous statements, *State* v. *Emerson,* 78 S. C., 92, 58 S. E., 974, but

as Taylor was not on trial in this case, being dead, we have treated the question as if Taylor was a mere witness.

13. There being some testimony that Hartley at the time of encounter with Taylor struck Taylor with his pistol, or a pair of knucks, or the butt of his whip, breaking his nose, P. H. Corley, who was the sheriff of Lexington county, was put upon the stand by the State in reply and testified that when Taylor got to the jail that night after the killing, he had a bruise on each side of his nose, and that the skin was not broken. The witness, after describing the wound and stating that he had seen bruises made by a man's fist, was asked whether or not, in his judgment, the bruises appeared to have been made with a man's fist. Upon objection the Court ruled that if the witness was familiar with wounds made by the fist he could answer. Thereupon he gave his opinion that ·the bruises on the nose must have been made with the fist.

It is charged that this ruling was erroneous, as it appeared by the testimony of the witness, that he was not an expert and not sufficiently acquainted with wounds and bruises to express an opinion. As the ruling of the Court required that the witness should be familiar with wounds made by the fist, we must assume that it was understood that the witness had such special knowledge on the subject as would result from such familiarity. As such he might be considered an expert and entitled to express an opinion as to what agency was capable of producing such wound. *State* v. *Senn*, 32 S. C., 400, 11 S. E., 292. No objection was made on the trial that the form of the question and answer was in the concrete instead of the abstract, and the only point of objection raised in the exception is that the witness was not such an expert as to express an opinion. This is not a case in which an expert was allowed to give an opinion on the very point in issue, as it was a collateral matter and practically immaterial whether Hartley struck Taylor with fist, whip or pistol. Defendant does not claim

to have shot Hartley because of the character of his assault on Taylor, but that he shot in defense of his own person.

14. The Court did not err in charging the jury that self-defense is an affirmative defense and must be established by the preponderance of the testimony—when the jury was also instructed that, in order to convict, the State must establish the guilt of the defendant beyond a reasonable doubt. *State* v. *Welsh,* 29 S. C., 4, 6 S. E., 894; *State* v. *Bodie,* 33 S. C., 132, 11 S. E., 624; *State* v. *Way,* 38 S. C., 346, 17 S. E., 39; *State* v. *Way,* 76 S. C., 94, 56 S. E., 653.

15. In behalf of the defendant the Court was requested to instruct the jury:

10. "The law, recognizing the imperfections of human nature, does not require that one charged with homicide should show that there was no other possible means for escape, when he struck the fatal blow, but he is only called upon to satisfy the jury, that under all the circumstances by which he was surrounded, he really believed there was a necessity for taking the life of his adversary in order to preserve his own, or to save him from serious bodily harm, and that, in the opinion of the jury, those circumstances were such as would justify such a belief."

In response to which the Court said: "That will not do as it stands. This is right to a certain extent, but it does not go far enough. Now, for instance, 'that, in the opinion of the jury, those circumstances were such as would justify such a belief;' that is, such belief in the mind of a person possessed of ordinary firmness and reason; that the accused at the time of the killing actually believed that he was in such immediate imminent danger of losing his life, or sustaining serious bodily harm, that it was necessary for his own protection to take the life of his assailant, and that the circumstances in which the accused was placed were such as would justify such belief in the mind of a person possessed

of ordinary firmness and reason.    With that modification I charge you that request."

The modification was correct.    *State* v. *McGreer,* 13 S. C., 464; *State* v. *Thompson,* 68 S. C., 137, 46 S. E., 941.

16.  The Court was requested to charge as follows:

"In a case where the testimony shows that the deceased assaulted the defendant with a gun or pistol in such a way or manner as to cause a defendant to believe that such deceased was about to take defendant's life or inflict some great bodily harm upon him at the time he fired the fatal shot, and that a man of ordinary reason would have so believed, it would make no difference whether the deceased intended to take the life of such defendant or to do him some serious bodily harm; for, under such circumstanstances, the shooting would be justifiable, the killing excusable and such defendant should be acquitted."

Responding to this request, the Court said: "There is one essential element of excusable homicide lacking in that request, and that is he must have been without fault in bringing about the difficulty.    I charge you that proposition in the light of my general charge to you and as modified."

The modification was in accordance with the well settled law as to self-defense.    *State* v. *Dean,* 72 S. C., 84, 51 S. E., 524.

17, 18 and 19.  These exceptions complain of error in charging the law as to defense of one's dwelling.    The Court was requested to instruct the jury:

16.  "That the dwelling house where a man lives is his home or castle, and that he may repel force by force in the defense of his person, habitation or property, against one who manifestly intends and endeavors by violence to commit a felony on either, and in such case is not bound to retreat, but may pursue his adversary until he has secured himself from all danger; and if he kills his

adversary in so doing it is a justifiable defense and the jury should acquit him."

In response to this the Court said: "Very true, Mr. Foreman, as I charged you before; no one has the right to take the life of another, if the danger is passed, but he has the right where the danger is immediate to take the life of another to protect his home and family."

In the general charge, the Court said: "Now, a man's house is his castle; he has the right to protect every member occupying it, or there with him, and he may take life if it is necessary to do so, in order for such protection, but the danger must be imminent, must be immediate; when the danger has passed, one has no right to follow up another who has invaded his home for the purpose of taking his life; he has no right to do that under the law; no such law anywhere making the taking of human life excusable unless there be a necessity for it. But one when danger is passed, is over, is not allowed under the law to follow up another and take his life. The danger must be imminent; it must be immediate."

The modification was correct. The deceased when killed was in the public road near the gate of defendant's yard and defendant had left his house and come into his yard armed with his shot gun. The theory of the defense was that deceased, after knocking Taylor down, started to enter the gate with pistol pointed at defendant and threatening to kill him. The theory of the State was that deceased left the house when ordered out and was in the road striking Taylor with a whip in his right hand and with no pistol drawn when Stockman shot him from the rear. The issues thus presented made it very proper for the Court, in charging the law as to defense of one's dwelling, to point out that the danger should not be passed, but should be imminent. The charge was in harmony with the law as declared in the *State* v. *Rochester,* 72 S. C., 199, 57 S. E., 685, and *State* v. *Brooks,* 79 S. C., 148, 60 S. E., 518.

26—82

20 and 21. These exceptions allege that the charge as a whole conveyed to the jury that, in the opinion of the Court, the defendant was guilty. These exceptions are without foundation. The charge was fair and impartial.

The judgment of the Circuit Court is affirmed.

May 5, 1909. Per Curiam. After careful consideration of the petition for rehearing in this case the Court is unable to discover that any material question involved in the appeal has been overlooked or disregarded. It may be conceded that the Court was in error in supposing that the deceased was killed while within the limits of the public road in front of defendant's dwelling and that deceased was really shot when he was some eighteen feet in front of defendant's gate and between defendant's enclosed yard and the public road, still such mistake does not materially affect the correctness of the conclusions reached by the Court.

It is, therefore, ordered that the petition for rehearing be dismissed and the order staying remittitur herein be revoked.