### 6707

### QUICK v. MILLFORT MILL CO.

1. Master and Servant—Fellow-Servants.—The master is not liable for injury to a servant, a carpenter of mature years and experience, caused by his doing a piece of work in a different way than suggested by the master and with a simple appliance selected by him and a fellow-servant from an adequate supply of suitable material.

   *Koon v. Ry.,* 69 S. C., 108, *distinguished from this case.*

2. Evidence.—An affirmative answer of a witness to a leading question in chief giving an opinion cannot have the effect of modifying his statement of the facts in other parts of his evidence.

3. Master and Servant—Appliances.—Master is only required to furnish reasonably safe appliances and not such appliances as may have been supplied or may have protected from a casualty for which the master was not responsible.

4. Punitive Damages.—Whether there is any evidence to support punitive damages should be raised by motion for nonsuit or by request to charge.

Before Klugh, J., April Term, 1906.    Reversed.

Action by B. B. Quick against Millfort Mill Co. From judgment for plaintiff, defendant appeals.

*Messrs. Wilson & Wilson,* for appellants, cite: *As to safe place:* 74 S. C., 419; 72 S. C., 242, 270; 3 Am. Neg. R., 533; 7 Id., 283; 1 Id., 156. *As to safe appliances:* 72 S. C., 348; 7 Am. Neg. R., 110; 9 Id., 194. *If no evidence of punitive damages, it is error to submit that question to jury:* 103 Ala., 134; 91 U. S., 489; 62 Mo., 326; 21 Colo., 533; 72 S. C., 411; 74 S. C., 736.

*Messrs. Geo. W. S. Hart* and *Augustus M. Deal,* contra. *Mr. Hart* cites: *Motion for nonsuit on whole case does not raise question of failure of proof of punitive damages:* 73 S. C., 433; 73 S. C., 260; 75 S. C., 293. *Master must furnish safe place:* 73 S. C., 570. *Whether it is safe is for jury:* 76 S. C., 63. *Assumption of risks must be pleaded:* 73 S. C., 507; 71 S. C., 81; 65 Am. Dec., 225.

*Mr. Deal* cites: *It is duty of master to furnish servant safe place to work:* 73 S. C., 570; 72 S. C., 269, 421; 71 S. C., 58; 116 U. S., 647; 69 S. C., 107; Woods M. & S., 681, 777; 2 Thomp. on Neg., 975; 72 S. C., 102. *And whether he did or not is for jury:* 76 S. C., 284, 63; 74 S. C., 19. *Error in refusing nonsuit may be cured by defendant's evidence:* 63 S. C., 567; 69 S. C., 107. *Duty to warn:* 72 S. C., 240, 420. *Assumption of risks must be pleaded:* 73 S. C., 507; 75 S. C., 71. *Grounds of nonsuit not made below cannot be made here:* 61 S. C., 404; 72 S. C., 341; 63 S. C., 566; 73 S. C., 434. *No assumption of risk without knowledge:* 72 S. C., 420. *This question is for jury:* 60 S. C., 17; *One doing master's duty is his representative:* 72 S. C., 420; 69 S. C., 108; 73 S. C., 570; 71 S. C., 57. *Whether appliances were safe and plaintiff was negligent in using them is for jury:* 53 S. C., 100; 69 S. C., 530, 108; 76 S. C., 284.

*Contributory negligence must be pleaded:* 75 S. C., 71; 67 S. C., 146; 73 S. C., 502; 68 S. C., 55; 70 S. C., 213. *Proximate cause is for jury:* 76 S. C., 368; 61 S. C., 404; 51 S. C., 237. *Motion of nonsuit on whole case does not include motion of nonsuit on question of punitive damages:* 63 S. C., 566; 73 S. C., 433; 75 S. C., 293.

November 27, 1907. The opinion of the Court was delivered by

Mr. Justice Jones. The plaintiff brought this action to recover actual and punitive damages for personal injuries sustained by him while in the employ of defendant as a carpenter assisting in the construction of an addition to defendant's mill. The complaint alleged that on the 11th day of July, 1904, plaintiff was directed by the vice-principal of the defendant company to go upon the beams of the second floor of the addition to the mill and there press into position for them to be spiked, certain pieces of timber which were being capped upon the beams in order to raise their height before the floor was laid thereon, and that while so employed, under the immediate direction of the vice-principal, he was precipitated from the position in which he was working some distance to the ground below and injured, through the negligence and wilfulness of defendant "in not furnishing plaintiff a safe place in which to work or safe appliances with which to work, or in not directing the work to be done in a less dangerous and equally practicable manner."

The defendant made answer, admitting that it was incorporated as alleged and that plaintiff was in its employment as a carpenter assisting in the construction of said building at the time alleged and that he was required to work under the direction and control of the assistant superintendent of the mill, but denied the other allegations of the complaint, and alleged that plaintiff's injury was due solely to his negligence, that he contributed thereto by his own negligence, that he received the alleged injuries while voluntarily doing

or attempting to do something in a manner contrary to the instructions given him.

The trial resulted in a verdict and judgment in favor of plaintiff for $1,342.00 and the defendant appeals therefrom, alleging that the Court erred in refusing the motion for nonsuit, the motion for a new trial, and in submitting to the jury the question of punitive damages.

The refusal of the nonsuit and the new trial may be considered together in so far as the exceptions involve the general question whether there was any evidence tending to show injury as the result of the failure of defendant to perform its duty as master.

The plaintiff was the only witness examined in his behalf. His testimony was to the effect that on July 11, 1904, at Fort Mill, S. C., he was employed as a carpenter to assist in the construction of said mill building and was working under the direction of Mr. McGregor, the assistant superintendent for defendant. In the progress of the work, it was found that, in order to make the second floor of the new building on a level with like floor in the old mill, it was necessary to cap the floor beams or joints which were 10x14 with other timbers 2x10, so as to raise them two inches higher. The plaintiff and another carpenter, Mr. Long, were directed by the superintendent to go upon the beams and spike the timbers on them. Other carpenters, Mr. Stevens and Mr. Lytle, were following behind putting down the flooring upon the beams after they were capped, and Mr. McGregor was standing near. Some of the capping timbers had become warped and in places bulged over the edge of the beam one-half inch or more. We now quote plaintiff's own language, describing how the injury occurred:

"Q. Now, Mr. Quick, when you found difficulty in putting these beams down on account of the warped condition of these pieces you were capping on top of the beam, what did you do, you and Mr. Long? A. Well, we got to one where it was not straight—wouldn't fit down straight. Mr. Long

went to Mr. McGregor to see what to do about it; so he brought him back there, and Mr. McGregor said we would have to get a prize lever and prize it back flush with the beam and spike it down. It wouldn't do to let it lie that way.

"Q. Then what did Mr. Long and yourself do? A. We went down to the waste-pile and picked us out some scantling, a couple of pieces two by four, and brought it back; and we first tried to drive it in—put the piece about the same distance between the two beams; it might have been a fraction longer, and put it crossways and tried to spring it back by driving up, but by the timber being so crooked and long, it would just spring. Every time we would drive it, it would bounce back. So, then, we cut off a little more of the scantling and put it in between, and put a prize. And Mr. Long sat on the other side and held it with a spike and I prized for him to spike it. I just sat a straddle of the beam; had the plank drawn out so I could sit on the end of the beam and have my legs hanging down and the lever to my left shoulder. I had hold of the prize that went across with my left hand to keep it from slipping down, and holding to the beam with my right hand and Mr. Long on the other side with a spike driving it in, and I was prizing for him to spike with and it broke all at once and shocked me through."

When asked to state again exactly how he was sitting and prizing the timber back into position, he said: "I had a piece of flooring plank run across and extended out a little beyond the beam, and was sitting on it right over the beam, with my legs hanging down, and my lever down between my legs like and against this (left) shoulder, holding the two-by-four scantling that ran across to prize with, holding it to keep it from dropping down with my left hand, and holding the beam with my right hand, and Mr. Long was on the other side to spike it when I pressed it in flush with the beam. While I was pressing it he was driving it. The scantling broke and dropped me right underneath."

With respect to the selection of the scantling after Mr.
McGregor told them to get a lever and press the capping
timber back, the case also shows the following:

"Q. Where did you say you got the timber from? A. Me
and Mr. Long went down to the waste-pile. Q. You
selected it at the waste-pile? A. Where there was dif-
ferent kinds of pieces of scantling. Q. Do you remember
now who selected that piece of timber, you or Mr. Long?
A. No, sir, we both got one piece. I can't say who selected
that piece."

"That piece" referred to the piece which plaintiff held
against his shoulder and which broke as he pressed against
it. The other piece of scantling was used between the
beams, which were eight feet apart; Mr. Long sitting on the
beam holding one end of the scantling against the bulge in
the capping timber, while plaintiff, sitting nearly opposite
on the other beam, first endeavored to so drive a scantling
between the beams as to press out the bulge with such single
prize. According to plaintiff's testimony, it was only after
repeatedly trying this single prize that he resorted to the
method which resulted in his injury. Inasmuch as the only
direction given plaintiff and Long was to get a lever and
prize out the overlap, and pursuant to such direction the
single prize lever was used, it is reasonable to suppose that
plaintiff understood the direction to be to do the work in
the method which was first tried. The cutting of the scant-
ling so as to fit closely between the beams and the use of it
as a driving prize between the overlapping timber on one
beam and the solid beam opposite, negatives the idea that it
was the direction of the superintendent to use an additional
prize between its end and the beam. Mr. McGregor testi-
fied in effect that he directed them to saw a piece just the
distance between the beams and take a hammer and drive
the warped timber in and nail it down, and that instead of
hammering this prize back, plaintiff cut it shorter and got a
piece of plank, inserted it between the end of the prize and
the beam and threw his weight against it, when it broke and

he fell to the ground, and the piece of plank was afterwards picked up and found to have been chopped with an ax at the place where it broke.

Mr. Lytle, who was working with Mr. Stevens about ten or twelve feet away, laying the floor, testified in effect that plaintiff did not do as he was instructed by the foreman, Mr. Stevens, which was to drive the single prize between the warped timber and the opposite beam, but picked up a piece of inch plank and used it as a prize.

Mr. Stevens testified in effect that he told plaintiff how to do the work (explaining the manner as already indicated); that plaintiff said he did not care to do it that way, he could fix it other ways; that plaintiff then picked up the piece of inch plank and used it as a prize.

Mr. Long, who worked with plaintiff, testified in effect that the superintendent instructed him (Long) to get a piece of scantling and saw it eight feet long, that he told plaintiff that he (Long) would go out on the timber and he (plaintiff) on the other, that he (Long) would hand him the end of the timber, a piece 2x4, and that he (plaintiff) was to drive it in, that instead of driving it he went to the floor and got this piece of plank, stuck it in and, as he bent on it, it broke and he fell.

From the foregoing, whether the plaintiff's testimony alone is considered or whether the whole testimony is considered, it is manifest that the only reasonable inference is the plaintiff in the progress of his work voluntarily adopted the particular method which resulted in his injury. The testimony is undisputed that the method of prizing adopted by plaintiff was very dangerous, while the method of driving with the single prize was usual and safe. The work was afterwards finished by the method which plaintiff testified he first tried.

It is true that plaintiff's counsel asked him the question: "Did you do the work you were directed to do in the manner that you were directed to do it," to which he replied

"Yes, sir." But this mere opinion of the witness cannot have the effect of modifying his positive statement of fact that the superintendent directed them "to get a prizing lever and prize it back flush with the beam, and spike it down," and there was no testimony that the superintendent gave any other direction.

The plaintiff, by his own testimony, had been working as a carpenter by trade for four years, having begun to learn the trade ten or twelve years before his injury. While he testified that he had never driven in warped timber before this occasion and apprehended no danger in applying the prize, it would be unreasonable to excuse a man of his age and experience from the ordinary use of his senses and faculties. As a man of ordinary intelligence and experience he was bound to know that in the method of operation adopted by him there was danger of falling between the beams to the ground below if either of the prize sticks should slip away or break under his pressure forward, whereas no such danger would accompany the driving of the single prize.

It further appears in plaintiff's own testimony that the scantling which broke was selected by himself or by himself and Long, a fellow-servant, from a pile of different kinds of pieces of scantling. As there was no testimony tending to show that Long alone selected the piece that broke and no testimony that Long was acting as representative of said master in selecting the scantling, there is no basis for an inference that the selection was made by the representative of the defendant, and the case does not fall within the principle of *Koon* v. *Southern Ry.*, 69 S. C., 108, 48 S. E., 86, in which it was submitted to the jury to determine whether Koon was injured by the negligent operation of a sound appliance by a fellow-servant or the negligent selection and repair of a defective appliance by a fellow-servant under the direction of the master, the master being responsible in the latter case and not in the former. In that case the party injured was charged with no duty to perform in connection with the selection of the material or in repair of the particu-

lar appliance; in this case the party injured was charged with the duty of selecting and operating the appliance. The appliance, too, was so simple, a mere piece of scantling, that it is unreasonable to suppose that an adequate supply of suitable timber was not readily available about the building, and indeed it appears from plaintiff's testimony that the selection was made from a pile containing different kinds of pieces of scantling. The only possible inference from the plaintiff's testimony is that he assumed the duty of selecting the material and preparing the simple temporary contrivance for his own use in the prosecution of his employment. The law denies him any right of recovery for any injury resulting from the appliance which he selected and prepared for himself, within the principles stated in *Keys* v. *Granite Co.,* 72 S. C., 97, 51 S. E., 549, and *Green* v. *Catawba Power Co., 77* S. C., 432.

The plaintiff, however, was asked by his counsel in what way the place could have been made safe, and said that "there could have been a kind of temporary floor thrown over the place, two or three flooring plank, so if my lever had broken and thrown me I would not have gone through. But of course there was nothing said about fixing it that way. And then there could have been a tackle and block to draw it over from the ground, but Mr. McGregor spoke about fixing one to it and Mr. Stevens said it was not necessary—so he told me."

The suggestion that block and tackle could have been supplied for use instead of the scantling prize is not deserving of serious consideration. The master is at liberty to adopt such reasonable safe appliances as he deems best suited for work in hand. The question was not what appliances could have been supplied, but whether there was any breach of the master's duty to furnish reasonably safe appliances. The burden was on plaintiff to show negligence of the defendant. There was no evidence tending to show that it was proper or usual to supply block and tackle in such circumstances instead of the simple contrivance directed to be used.

The suggestion of plaintiff that two or three planks could have been thrown over the place so as to arrest his fall in case the lever broke, does not tend in the slightest to make out a case of negligence against defendant. In the first place, it appears that plaintiff used whatever flooring plank he considered necessary for his safety by securing one to sit on while on the beam driving the prize, and no reason appears why he did not procure or could not have procured other flooring planks near at hand, if he regarded such to be a proper precaution for his safety. In the next place, after scrutinizing the testimony, we find it impossible to conceive how planks could have been so closely thrown about him on the beam as to arrest his fall and at the same time not have seriously interfered with or prevented the work he was attempting to do, the spiking down of timber along the beams and the use of a prize across the space between the beams. But if it be true that such planks may have been so placed as to have arrested his fall, it does not follow that it was the duty of the defendant to take such precautions.

"A master is not required to construct his instrumentalities, or so to arrange the place where his servants work, that they shall be protected from the consequences of a casualty for which he is not responsibe." 1 Labatt on Master and Servant, section 13; *Jones* v. *Granite Mills,* 126 Mass., 84; 30 Am. Rep., 661.

It has been shown that the place where plaintiff was working was not made unsafe through any negligence of the defendant.

The foregoing views render it proper and just that a new trial be ordered and it is not neccessary to consider the question as to punitive damages, even if it were otherwise proper to do so, in the absence of a motion for nonsuit as to the cause of action for punitive damages or a request to charge that there was no evidence of such damages. *Jennings* v. *Mfg. Co.,* 72 S. C., 419, 52 S. E., 113.

The judgment of the Circuit Court is reversed and a new trial ordered.