14533

BRAZEALE v. PIEDMONT MANUFACTURING COMPANY

(193 S. E., 39)

December 1936.

*Messrs. Morgan & Cothran* and *B. T. Leppard,* for appellant, cite:

*Messrs. B. F. Martin* and *J. G. Leatherwood,* for respondent, cite:

September 21, 1937.

*Per curiam.*

This is an action for damages, both actual and punitive, for personal injuries which the plaintiff, an employee of the defendant, claimed to have suffered in June, 1935, while working as a spinner in the company's cotton' mill. She alleged:

"That while so engaged, a small steel ring or appliance known as a 'traveler', by reason of being worn and defective, became disconnected from the machine, flew off and struck the plaintiff in her left eye, cutting, tearing and wounding same, and bringing about a diseased condition, and causing her much illness, pain and suffering and permanently affecting and injuring her vision and her physical and nervous system, causing certain bony structure to have to be removed and causing her great physical, nervous and mental pain, shock, suffering and impairment as well as medical expenses and loss of time. * * *

"That all of the said injury and damages were proximately caused by the negligence and willfulness of defendant in that it negligently and willfully failed to furnish plaintiff with a safe place in which, and safe appliances with which, to do her work and negligently and willfully furnished defective and unsafe appliances and an unsafe place within which she should do her work, and in like manner failed to inspect same and keep same in proper repair."

The defendant admitted that the plaintiff was in its employ at the time she received the injuries complained of, denied all acts of negligence or willfulness on its part, and alleged that any injury suffered by Mrs. Brazeale "was caused by an ordinary risk incident to her employment, which risk the plaintiff assumed."

The case was tried in December, 1936. The issue of actual damages was submitted to the jury, and a verdict for $2,500 was returned for the plaintiff. From judgment entered thereon, this appeal is taken.

By its first four exceptions, the appellant imputes error to the trial Judge in refusing its motions for a nonsuit and a directed verdict made upon the following grounds: (1) That there was no evidence of negligence on the part of the defendant; and (2) that the plaintiff assumed the risk incident to her employment. These we will consider in the order named.

There is no presumption of negligence, as the respondent concedes, "from the mere failure of defendant's instrumentalities." As stated in *Green v. Southern Railway*, 72 S. C., 398, 52 S. E., 45, 47, 5 Ann. Cas., 165, "when an accident in ordinary use, and there is neither proof of defects in the machine nor of error in its use by the servant, the law will not draw first the inference that the machine was defective, and then from that inference infer the lack of care of the master."

As to the master's duty, in *Lester v. Carolina C. & O. Railway*, 93 S. C., 395, 76 S. E., 976, we find the following: "The law is so well settled in this State that it is unnecessary to quote authority that it is the duty of the master to furnish the servant with a reasonable, suitable and safe place to work, and keep the same in reasonable, safe and suitable repair, and furnish the servant with reasonably safe and suitable machinery and appliances to do the work with, and keep the same in reasonably safe and suitable repair, and this duty of the master is nonassignable."

In the case at bar, while it was alleged, as is seen, ■ that the small steel ring or appliance known as a "traveler", by reason of being worn and defective, flew off and struck the plaintiff in her left eye, it was testified that the defects in the machinery were really in the "traveler ring," the ring on which the traveler moved. The plaintiff who operated five large spinning frames, stated that the traveler moved very rapidly, that the traveler ring was worn, and that there was also a slight nick in the ring, which looked like an old break. She also said that, while a traveler ring was supposed to be fastened down by screws to a steel beam, it was in fact loose at the time. As the appellant argues that her testimony establishes its contention, that the evidence does not show what caused the traveler to fly off, we quote her thereabout:

"Q. Do you mean to say that that being loose caused the little ring to fly off? A. Well, it would help to have caused it.

"Q. It might have caused it; how many other things would cause this little ring to fly off? A. Well, that place being chipped out in there.

"Q. Now that might have done it? A. Yes, sir.

"Q. It being loose might have done it? A. Yes, sir.

"Q. What else might have done it? A. It being worn.

"Q. It being worn might have done it? A. Yes, sir.

"Q. Now do you know which of those did cause it? A. Sir?

"Q. Do you know which one of those things did cause the little ring to fly off. A. Well, I should think all three of them.

"Q. You think all three of them? A. All three of them did have something to do with it coming off.

"Q. Would anything else have caused it to come off? A. Not that I know of.

"Q. Suppose it had broken? A. If it had broken or hit that place it would have caused it to come off.

"Q. But as to those three do you know whether or not any one of the three caused it? A. Well, I should think they would have helped to cause it.

"Q. Yes, but do you know that any one caused it? A. I could not say which of the three did cause it.

"Q. You could not say which one caused it? A. No, sir.

"Q. But any one of the three might have caused it? A. Yes, sir."

Harper Gilreath, a witness for the plaintiff, also testified on this point. He stated that "the traveler ring sets on a rail like this and the traveler runs on the flange and if there is a crack in this flange it won't run, it will break off." On being shown the traveler ring in question he stated that it was not in running condition on account of a crack that appeared in it, and that in such case the traveler would run for a while but would finally break off. Elbert Luther, a mill hand experienced in such matters, stated that a defect in the traveler ring will cause the traveler to fly off, and that nothing else would; and that the speed of the traveler would not cause it to do so unless the ring was badly worn.

We think that the trial Judge correctly refused to grant a nonsuit on this ground. As is seen, the testimony we have quoted tended to show that the traveler ring, on which the traveler moved, was defective, in that it was worn and had a crack in it, which would cause the traveler to fly off or break off. Also, according to the evidence, the traveler ring was not properly fastened to the spinning frame, but was loose, from which it might be inferred that proper inspection of the machinery was not made, and from all of which an implication of negligence on the part of the defendant as to keeping the machinery in reasonably proper repair and as to reasonable inspection might arise.

As to the second ground of the motions, it is argued by the appellant that if the "flying off of the traveler" was an ordinary risk of the employment, the plaintiff assumed such risk; that even if the risk was an extraordinary one, the

plaintiff knew that the travelers would fly off and that she might be struck by them, and fully understood and appreciated the dangers therefrom; and that, therefore, Judge Bellinger was in error in refusing to direct a verdict on this ground.

In *Tyner v. Atlantic Coast Line R. Co.*, 149 S. C., 89, 146 S. E., 663, 670, the Court said: "The general rule is that the servant assumes such risks as are ordinarily incident to the service, but does not assume extraordinary risks unless they are known to and appreciated by him, or are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them." See, also, *Gowans v. Watts Mill*, 135 S. C., 163, 133 S. E., 550; *McKinney v. Woodside Cotton Mills*, 167 S. C., 438, 166 S. E., 499; *Scott v. International Agr. Corporation*, 180 S. C., 1, 184 S. E., 133; *Hice v. Dobson Lumber Co.*, 180 S. C., 259, 185 S. E., 742.

In 39 C. J., 704, the writer says: "Risks and perils ordinarily incident to the employment are such as are to be expected from the particular character of the service in which the employee is engaged, and have generally been defined as those which remain after the master, or one rightly exercising the authority of the master, has exercised due care to prevent or avoid them—which cannot be obviated or avoided by the exercise of due care on the part of the master. Risks which ought not to exist and would not exist except for the employer's negligence are not classed as ordinary risks, but as extraordinary risks."

The word "extraordinary," as has been held, is not used to denote magnitude or as a mark of degree. "An extraordinary risk is one lying outside of the sphere of the normal, arising out of conditions not usual in the master's business, and, in applying the doctrine of assumption of risk, one which may be obviated by the exercise of reasonable care on the master's part." 39 C. J., 691.

In the case at bar, the plaintiff testified that she knew the travelers were accustomed to fly off, and that she had had them to hit her in the back, "but usually it was a bad ring, rusty or something. "She also stated that the traveler ring here in question was not fastened securely to the spinning frame as it should have been, but was loose. The witness, Luther,. said that while the travelers flew off frequently, they are not supposed to do so, as that is not the purpose for which they are put on. He further stated that a defect in the traveler ring would cause this to happen, and that nothing else would. There was testimony which tended to show that the ring involved was defective, in that it was worn and had a nick or crack in it, which would cause the traveler to fly off. It was reasonably inferable that if proper inspection had been made the nick or crack in the ring would have been revealed, and would have shown that the ring had worn thin and had become loose. It is conceded that it was not the plaintiff's but the master's duty to inspect the machinery; as the master's nondelegable duty, as we have seen, is to furnish the servant safe and suitable machinery with which to do the work and to keep such machinery in reasonably safe and suitable repair.

We think that the risk, under the facts disclosed, was an extraordinary one, and that it was for the jury, under the testimony and applicable principles of law, to say whether the plaintiff fully understood and appreciated the danger of the risk, and whether it could have been obviated by the exercise of reasonable care on the master's part. The trial Judge, therefore, properly submitted the question to them.

The fifth exception charges Judge Bellinger with error in refusing to order a mistrial, the motion therefor being based upon the ground that the "respondent had brought out before the jury the fact that an insurance agent was involved in this suit." When the plaintiff was being cross examined by counsel for the defendant, she said that shortly after the accident she made a statement there-

about in writing; that she went to see Dr: Carpenter on several occasions in regard to her eye, and about July 23d he found that there was an abscess underneath the eye on the side of her face, but she denied that she had' said in the written statement that the doctor had told her that the injury to the eye had nothing to do with the abscess. On redirect examination she testified that she went to the office of Mr. Underwood, the superintendent of the mill, and there, at his request, made the written statement which he told her the company always had to have from any one that got injured in the mill. Then followed these questions and answers:

"Q. Was any one else present? A. Yes, sir, some other man present.

"Q. Do you know who he was? A. No, sir."

When Mrs. Belle Knight, a witness for the defendant, and a sister of the plaintiff, was on the stand, she stated that Mrs. Brazeale had had trouble with her eyes "ever since she was a little girl." On cross examination, she said that she told Mr. Underwood, after she had heard that her sister had been injured in the mill, about her eyes always having been bad. She was then asked if if she had not told her brother, Elbert Luther, that she had made such a statement with reference to her sister's eyes before the injury, and she replied: "I told, I reckon it must have been the insurance man about it." Counsel for the appellant contend that the attorney for the plaintiff thus succeeded, by "veiled references," in directing the attention of the jury to the fact that the man present and interested in the case was an insurance agent; that this was prejudicial to the defendant, and for that reason a mistrial should have been ordered.

The trial Judge was undoubtedly right in his ruling. It does not appear that counsel for respondent referred to any insurance in examination of the witnesses. The questions asked the plaintiff were not objected to and were not objectionable. The question asked the witness Knight, con-

cerning a statement made to her brother, seems to have been for the purpose of contradiction, and later the brother did testify that she had made such a statement to him. The answer that she gave to the question was not responsive thereto, and it was voluntarily made by her. As stated by the trial Judge in refusing the motion, "she volunteered this statement about insurance, which was not referred to by counsel in examining her at all." Of course, in cases of this kind, if plaintiff should bring out on examination of the witnesses that the defendant carried indemnity insurance, our decisions are to the effect that a mistrial should be ordered. These decisions, however, several of which are cited by the appellant, are not controlling under the facts of this case. Where improper reference is made to insurance, or an insurance agent, by the witness, as was here done, and for which the plaintiff is not responsible, it seems that the only remedy that the Court can give is to grant a motion to strike out the objectionable testimony and to instruct the jury to disregard it. On that point, however, there is no complaint. The exception raising this question must be overruled.

The plaintiff was cross examined by counsel for the defendant with reference to the treatment of her eye by several doctors. She denied that Dr. Carpenter said "he didn't think the abscess was caused from the eye injury"; and also denied that Dr. Houston had stated to her that, so far as he could tell, her eyes "were one hundred per cent good except needing glasses." She then stated, in response to inquiries of counsel, that she had not summoned Dr. Berry and Dr. Carpenter as witnesses, and that she did not think she had summoned Dr. Houston. The following question was then asked: "So you would rather try this case before the jury then without the testimony of your doctors?" Upon objection of opposing counsel, the Court would not permit the question, holding that it was for the jury to draw conclusions as to why the respondent did not

summon as witnesses these doctors who had attended her. The contention is that this was error for the reason that "the question was competent on cross examination and the appellant was entitled to an answer thereto."

We are not in accord with the view that the judgment should be reversed for the reason stated by the appellant. The plaintiff testified fully with reference to the treatment of her eye by the doctors named, what they said or did not say in regard thereto, etc., and it was for the jury, as stated by the trial Judge, to draw their own conclusions or inferences from such testimony why she did not summon these doctors as witnesses. But even if there were error as contended, it did no harm. In addition to plaintiff's full testimony, two of these physicians, summoned by the defendant, were present at the trial and testified at length in the case. The exception raising this question is overruled.

When C. P. Brazeale, the husband of the plaintiff, was on the stand, he testified as follows: "Q. State what you can about her pain and suffering during that time? A. Well, she claimed her eye hurt her all the time, pained and ached all the time after the injury." This testimony was objected to by the defendant on the ground that it was incompetent. The Court, in overruling the objection, said: "That is the only way a doctor can tell whether or not a person is in pain, a person saying they are in pain; I think that would be admissible."

The seventh exception alleges error, the claim being that the testimony was purely hearsay, and was incompetent for that reason. Counsel for the appellant say: "The Circuit Judge admitted the answer upon the ground that a doctor has no other way to tell whether or not a person is in pain and that, therefore, the husband of the plaintiff, an ex-mill man and farmer, had a right to give hearsay testimony. We deny both propositions and submit that the testimony, whether by doctor or layman, was violative of the hearsay rule."

As is seen, the evidence objected to was confined to complaints by the plaintiff of her pain and suffering. The admission of such testimony is sustained by the case of *Camp v. Atlanta & C. A. L. Railway Company*, 100 S. C., 294, 84 S. E., 825, citing *Gosa v. Southern Railway*, 67 S. C. 347, 45 S. E., 810. But even if its admission were error, which we do not hold, the appellant here would have no grounds for complaint, as similar testimony was elicited by it from its own witnesses, Dr. Houston and Dr. Carpenter.

It is also argued that the trial Judge erred in admitting in evidence "that piece of machinery known as a traveler ring"; the ground of objection being that there was not sufficient evidence to show that such ring was the one upon the machine at the time of the alleged injury to the plaintiff. We are not in accord with this contention. An examination of the testimony discloses the contrary. The plaintiff positively identified the ring in question by reason of certain markings on it. Although closely examined by counsel on the point, there was no uncertainty in her mind about it. The Court, therefore, properly admitted the ring in evidence.

On the question of assumption of risk, Judge Bellinger instructed the jury in part as follows: "Now, I charge you, Mr. Foreman and gentlemen of the jury, further, that before a servant can be held to have assumed extraordinary risks she must have known of it, and even where she knows or ought to have known of the risk, it is for you to determine whether or not she assumed the risk under the circumstances proved in the case." It is contended that this was error, in that the Court "submitted to the jury to determine as a matter of fact that which is a conclusion of law."

We do not agree with the view that the quoted excerpt from the charge is a proper ground for reversal of the judgment. When considered as a whole, the instructions given on the question of assumption of risk were all that the ap-

pellant could ask for or was entitled to. Furthermore, under the facts and circumstances of the case, which the testimony for the plaintiff tended to show, it was for the jury to determine, as we have already said, whether she understood or appreciated the danger of the risk—the flying off of the travelers from the defects testified to have existed in the traveler ring. The charge complained of, therefore, under the circumstances shown, was not really objectionable or inaccurate as contended.

The trial Judge charged the several requests submitted to him by the appellant; but, in doing so, he stated to the jury that these requests should be taken in connection with what he had already told them. The appellant argues that the added words made the impression upon the jury that the requests were unsound as prepared. We do not see how this could be so. If the general charge embodied, as it did, correct and applicable principles of law, it is clear that the verdict of the jury could not possibly have been based upon any unsound statement of principle.

Especial complaint is made as to the disposition of the sixth request. After Judge Bellinger had read it, he told the jury that he would charge it "in connection with the remainder of my charge." It is contended that the "remainder" of his charge did not refer to any principle of law embodied in the request; and that, therefore, the superadded words destroyed the force of the proposition of law submitted. We are not in agreement with this view. The principles of law embodied in the several requests were substantially stated in the general charge. The effect, therefore, of the added words, it seems to us, was merely to advise the jury that the requests to charge were but restatements of the principles of law, in the language of the appellant, which the Court had already charged them; and that, as a part of the whole charge, these requests must be considered along with what the Court had already told them. We are satisfied that the appellant suffered no harm from

the added words complained of. In fact, no good reason appears why they were not properly used. These assignments of error, therefore, are found to be without merit.

The final contention of the appellant is that the Court "erred in not granting a new trial or a new trial *nisi* for the reason that the verdict was excessive in view of all the testimony." There was evidence to the effect that the plaintiff suffered much pain, and that the condition of her eye was bad as the result of the injury. The trial Judge heard all of the testimony, and we cannot say that he abused his discretion in refusing to interfere with the verdict of the jury.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. JUSTICE CARTER did not participate on account of illness.