## 18036

William Jennings BELLAMY, Respondent, v. Thelton HARDEE, d/b/a T. Hardee Drainage Company, Appellant

(129 S. E. (2d) 905)

*Messrs. Burroughs & Green,* of Conway, *for Appellant,*

*H. T. Abbott, Esq.,* of Conway, *for Respondent,*

February 28, 1963.

BUSSEY, Justice.

In this action plaintiff-respondent recovered a verdict for actual damages for personal injuries sustained by the plaintiff while an employee of the defendant-appellant. The case was submitted to the jury on the issue of alleged negligence of the defendant in failing to provide proper equipment with which to do the work, the defenses being a general denial, assumption of risk and contributory negligence. Timely mo-

tions for a nonsuit, directed verdict, and judgment *non obstante veredicto* were made and refused.

At the time of plaintiff's injury, on January 8, 1960, he was operating a dragline, digging a drainage ditch, there being on the job only one other employee, an assistant or helper to plaintiff. While of considerable weight, the particular dragline, as equipment of that kind goes, was a light-weight machine. The boom thereon was composed of three sections and was used with all three sections in place for certain work, but for doing close work it was cutomary and apparently advantageous to remove the middle section of the boom and shorten the same by bolting the front section to the rear section. At the time of his injury, plaintiff was engaged in changing and shortening the boom. The method customarily followed, and followed on this occasion, was to move the rear section of the boom, with the power of the dragline, along a board until it came in contact with the rear end of the front section. A jack was then used to raise the end of the front section to bring the bolt holes therein in line with the holes of the rear section.

No other method of changing the boom was known to either plaintiff or defendant prior to the time of the accident, and at the moment thereof, one bolt connecting the two sections had already been put in place and plaintiff was in process of jacking the other side of the front section to get holes on that side in line where his helper could insert a bolt. Plaintiff was holding on to the rear end of the front section with one hand, jostling it, and operating the jack with his other hand. While engaged in this activity, the testimony is that the jack stripped causing the boom to fall, jerking the plaintiff down and injuring him. No description of the jack was contained in the testimony, other than it was a regular car bumper jack, and there is nothing in the evidence to indicate whether or not the jack was worn or defective in any particular. The real gravamen of plaintiff's contention is that the defendant should have furnished him with a hydraulic jack, rather than the bumper jack, it being

plaintiff's opinion that the bumper jack was inadequate and unsuitable to the work. He also testified that he needed a tapered punch, which was not furnished, to help line up the bolt holes, but we think the evidence is not susceptible of any reasonable inference that the absence of a tapered punch had any causal connection with the accident.

The defendant was a man of some thirty years experience in the operation of heavy equipment, including draglines, and at the time of the accident, plaintiff was thirty-four years of age with ten years experience as a dragline operator. The evidence as to how long plaintiff had been working for defendant and with the particular equipment is not clear. He was still working for the defendant at the time of the trial, and at one point testified that he had been working for the defendant about one year, prior to the accident; at another point he testified that he had been using the bumper jack to lift the boom about five or six months. There is no evidence that any other type of jack had ever been used in changing the boom on this particular dragline, and the defendant testified that he had always used a bumper jack on this lightweight machine.

With the exception of a difference of opinion as to the suitability of a bumper jack for the use being made of it, there is little conflict in the testimony. The defendant testified, with reference to the plaintiff, "I knew he was experienced and I was after him and he finally went to work for me and I told him he was in charge and anything he needed to let me know and to run it just like it was his. I never bothered him." The plaintiff's testimony on this point was:

"A. He told me this here, he says, you have been doing this kind of work longer than I have, so carry on.

"Q. What did that mean to you?

"A. That I ought to know as much about it as he did.

"Q. Do you think you would?

"A. I believe so."

Plaintiff did not refute defendant's testimony to the effect that anything he, plaintiff, needed he was just to let the defendant know.

There is nothing in the record to indicate that plaintiff had ever mentioned to defendant any need for a tapered punch, even if the absence thereof had any causal connection whatever with the accident. With respect to the bumper jack, plaintiff on direct examination was questioned as follows:

"Q. Had you and Mr. Hardee ever discussed that about probably you ought to have another type tool?

"A. We changed it one day and I jacked it up and I said one day that jack is going to strip and something is going to happen. That's a lot of load to put on a little jack.

"Q. Did you discuss with Mr. Hardee that time that you probably needed something heavier?

"A. No, sir, I don't remember that.

"Q. What was Mr. Hardee's reply, if you remember?

"A. I don't remember asking him that. I just don't remember it."

Plaintiff further testified that there would be some danger connected with changing the boom with a hydraulic jack, but that there would be more with a bumper jack and that he knew this prior to the accident. Plaintiff also testified that he did not feel that the bumper jack would strip, which is in conflict with the casual statement which he testified he made in the course of changing the boom on some unspecified day. Whatever his belief or opinion about the bumper jack prior to the accident, it is clear from plaintiff's own answers that he never made any more than a casual remark thereabout. There is no evidence that the defendant even heard this casual remark, but assuming that he did, plaintiff's testimony shows that he never made any direct or specific request for a different jack. The uncontradicted testimony is that plaintiff was in complete charge and was told by defendant "* * * anything he needed just let me know."

It is academic that in considering motions for a nonsuit and/or a directed verdict the evidence has to be viewed in the light most favorable to the plaintiff. The primary question here is whether, viewed in that light, there can be drawn from the evidence an inference that the defendant was negligent in failing to provide proper equipment and that such negligence was the proximate cause of plaintiff's injury.

The master is not an insurer of the absolute safety of a servant but is liable only for negligence. *Lyons v. R. D. Cole Mfg. Co.*, 178 S. C. 520, 183 S. E. 466.

The test of a master's liability for injuries to a servant in a case founded upon negligence, is whose negligence is the proximate cause of the injury. *Whisenhunt v. Atlantic Coast Line R. Co.*, 195 S. C. 213, 10 S. E. (2d) 305.

There is no presumption of negligence from the mere failure of the master's instrumentalities. *Brazeale v. Piedmont Mfg. Co.*, 184 S. C. 471, 193 S. E. 39.

The doctrine of *res ipsa loquitur* does not apply in this state and the mere failure of the bumper jack, in this case, without more, does not give rise to a presumption of negligence on the part of anyone. Therefore, the only support in the record before us for an inference of negligence on the part of anyone, was the opinion of the plaintiff himself that the bumper jack was inadequate and unsuitable for the work. Since we have to view the evidence in the light most favorable to the plaintiff, we will assume that his opinion thereabout was correct, but it seems logical to us that if the defendant was negligent in failing to furnish a hydraulic jack instead, it follows that the plaintiff, in sole and complete charge of the operation and thoroughly experienced therein, was also negligent in continuing to use the bumper jack and failing to even ask for different equipment.

This is not a case where there was ground for reasonable difference of opinion as to the danger, in which the servant surrendered his judgment of unsafety in reliance upon the master's superior judgment. To the contrary, the evidence is to the effect that the master here regarded the judgment and experience of the employee to be superior to his, and the employee regarded himself as at least equal to the master in those particulars.

Of course, the duty of the master to furnish the servant a reasonably safe place to work and reasonably safe and suitable tools and appliances is ordinarily a nondelegable duty, but there is an exception to this rule where the injured employee is the vice principal of the master and in complete charge.

"As a general rule it is competent for the master to delegate to the servant, and for the servant to accept, the burden of inspection, or under some circumstances the maintenance of the appliances or places he is required to use, so as to relieve the master of liability for injuries to the servant resulting from the servant's failure to perform the duties delegated to him." 56 C. J. S. Master and Servant § 204b, p. 911.

It has been held by this court in *Nuckolls v. Great Atlantic and Pacific Tea Co.,* 192 S. C. 156, 5 S. E. (2d) 862, and *Cline v. Southern R. Co.,* 101 S. C. 493, 86 S. E. 17, 18, that an employee, who was in complete charge of the place of work, could not recover against the employer on the ground of an unsafe place to work, where it was the duty and responsibility of the injured employee to maintain the place of work in a reasonably safe condition.

Numerous decisions by this court support and sustain the proposition that when an injured employee has assumed the entire responsibility of inspection, selection, maintenance, and/or adjustment of appliances and has suffered injury from his own delict in failing to use due care to discover, correct or avoid the thing or condition

which caused his injury, he cannot recover. *Jones v. Postal Tel. Cable Co.*, 91 S. C. 273, 74 S. E. 492; *Keys v. Winnsboro Granite Co.*, 72 S. C. 97, 51 S. E. 549; *Green v. Catawba Power Co.*, 77 S. C. 426, 58 S. E. 147; *Quick v. Millfort Mill Co.*, 78 S. C. 472, 59 S. E. 365.

Apparently none of these cases involved an appliance which was contended to be inadequate or unsuitable at the time that it was initially selected and furnished by the employer. We think, however, that the principle is the same. Here the employer had never used any other appliance for the particular purpose and it had proved adequate and safe until the time of the injury. The plaintiff was thoroughly experienced and had been in complete and sole charge for months, if not longer. He does not contradict the testimony of the defendant that he had been told to ask for anything he needed.

Under these circumstances, even if we assume that the defendant was negligent in furnishing only the bumper jack initially, the only reasonable inference from the testimony is that the plaintiff himself was likewise negligent in continuing to use the bumper jack for the purpose and failing to make any definite request for, or effort to obtain, a more suitable jack. Assuming that both parties were negligent, the negligence of the defendant was much more remote than that of the plaintiff and the negligence of the plaintiff was the immediate, proximate cause of his injury, without which negligence the injury would not have occurred.

For these reasons, we are of the opinion that the trial judge should have directed a verdict in favor of the defendant. It is, therefore, unnecessary to discuss the other exceptions raised by the appeal.

Reversed and remanded for entry of judgment in favor of the defendant.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.